UNITED STATES DISTRICT COURT
IN THE
SOUTHERN DISTRICT OF FLORIDA

ROGERIO CHAVES SCOTTON,
MOVANT,

vs.

UNITED STATES OF AMERICA,
RESPONDENT.

CASE NO: 17-CV-62428

FILED BY_____ *PG*____D.C.

MAY 1 7 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

(SUPPLEMET MEMORANDUM)
MEMORANDUM OF LAW IN SUPPORT OF MOVANT'S
APPLICATION PURSUANT TO SECTION 2255

Come now, the Movant Rogerio Scotton, by and through pro se, respectfully moves this Court with this memorandum of law in support of Movant's application pursuant to § 2255 to vacate, set aside his conviction and dismiss this case in the interest of justice, or the alternative to a new trial.

It soon to emerged that the entire process in this case was fraught with collusion and tained by conspiracies in this orchestrated prosecution involving, officers of the Court, Movant's attorneys being ineffective during pretrial, sentence and appeal for having failed to properly investigate this case and provide the Movant with the minimum effective legal assistance which is guaranteed by the sixth amendment right.

The Movant will prove that the evidence introduced in trial, the contradictory testimony given by the government witnesses and the charges itself lodged on the indictment was a fruit-of-the-poisonous-tree which led to this unlawful conviction under constitution laws.

The Movant also will establishes numerous ineffective assistance provided in this case by attorney Doakes, Armstrong, Adelstin and Klugh, that along with prosecutorial misconduct which consequently violated the Movant's Fifth, Sixth and Fourteenth amendment rights clause to the U.S. constitution.

In this case, the unlawful evidence submitted by the government will also establish that the verdict in this case was obtained through a bias jury, wrongful charges and perjured testimony given by the government witnesses.

The Movant will soon prove others egregious constitution violation imputed directly by the prosecutor and unfortunately as well as the Court.

## I. STATEMENT OF THE CASE

In this case, "the-first-of-its-kinds novel", the FBI agent Vanbrunt arrested the Movant Rogerio Scotton on March 15, 2012, after obtaining a unlawful indictment in violation of his constitutional rights and Fed. R. Crim. P. 12(b)(3)(B).

Consequently, as a result of the government's orchestrated arrest, the Movant was charged with the alleged offense pursuant to 18 U.S.C. § 1341, (MAIL FRAUD) in which the government allege that the Movant committed a offense by the meaning of false and fraudulent statement to obtain ship accounts from FedEx, USP and DHL companies, in order to ship packages connect with his online business. (See dkt 3).

On June 18, 2013, a superseding criminal indictment was filed by the government dismissing the original indictment. In addition to the wrongful 26 counts of mail fraud, the government added one extra count of mail fraud pursuant to § 1341.

On July 18, 2013, the Movant was charged with a second superseding indictment with now twenty seven counts of mail fraud pursuant to § 1341 and two identical counts of making false statement to a government agency pursuant to 18 U.S.C. § 1001(a)(2). See, Dkt 95.

On January 26, 2014, trial began and the Movant was forced to represent himself

despite having requested on numerous occassion for the Court to appointed him a attorney.

The Movant was denied the right to counsel after two retained attorney withdrew from the case due to Movant's lack of funds and after one public defendant and two-Court appointed attorney whom did not provide the Movant with any meaningful legal assistance.

On February 26, 2014, the Movant was convicted by a bias jury as charged. The Movant filed his timely appeal notice and, on April 12, 2016, the Court of Appeals affirmed the conviction after unprecedented seven orchestrated extension requests made solely by the appeal attorney that along with his ineffective assistance provided under conflict of interest.

On October 20, 2016, the Movant submitted his petition for Writ of Certiorari without the benefit of a counsel which never passed the Supreme Court Clerk's table and was denied on December 12, 2016.

On December 12, 2017, the Movant filed his application pursuant to 28 U.S.C. § 2255 which maliciously and orchestrated was dismissed and unlawful denied.

The Movant objected the Magistrate Judge report and informed the Court that the request made by the Magistrate to dismiss the motion was unlawful and in violation of the Supreme Court ruling in CASTRO v. UNITED STATES.

The District Court has refused to review the objections made by the Movant and malicious denied the Movant § 2255.

The Movant's timely appeal to the District Court orchestrated unlawful denial which the government concorded with Movant's argument on August 24, 2018.

On March 7, 2019, the Appeal Court for the Elevent Circuit stated exactly the same argument mentioned by the Movant in his motions and vacated and remanded the District Court's denial of the Movant's § 2255.

The time now came after diligent searching to correct and vacate this unlawful and deceitful prosecution that has been admitted and presented to the jury, after serving

seven years in prison, the Movant is hereby requesting justice and the reversal of this orchestrated prosecution.

## II. GROUND ONE: WHETHER MOVANT WAS DENIED EFFECTIVE ASSISTANCE BY HIS ATTORNEYS DURING PRETRIAL VIOLATED HIS CONSTITUTIONAL RIGHTS

The Movant contends that under the Sixth Amendment he is entitled to receive effective assistance of counsel in a criminal prosecution.

In this case, the Movant was denied the guarantee rights by five Court appointed attorneys whos legal performance fell bellow the objective standard of reasonabless.

There was no one single investigation made by those Court appointed attorneys in this case. They did not interview a single government or defense witnesses. They did not pursue any important crucial leads made available to them by the Movant.

Petrial investigation and preparation are key to effective representation by counsel. The attorneys in this case performed none of those essential tasks. The attorneys did not interview or attempt to interview a single witnesses prior to trial. The attorneys failed to inspect the government discovery. In fact, during trial the government introduced unlawful and inaccurate spreadsheets which claimed to have been given to Movant during pretrial. Those cds were empty.

Below, the Movant will outline numerous ineffectiveness which have infected this entire case based on the attorney's blunder and negligence. Let us turn to the first ineffectiveness claim.

## A) PUBLIC DEFENDANT DOAKES

The Movant contends that he made available for the attorney on many occassions important leads and critical witnesses that would provide crucial testimony and evidence which could reasonably result in a different outcome in the case. These material evidences and witness testimony would have established that the Movant had always used a third party shipping company which was located in Atlanta, Georgia. In fact, attorney

Doakes had been provided with a affidavit from the third party company owner, Osvaine Duarte to the effect.

Numerous witnesses including, Junio Silva, Samara Moreira, would provide crucial testimony that the knew Osvaine Duarte, and that he offered shipping services to Brazil by air and sea.

Ms. Moreira would testify that many times she contacted Mr. Duarte to inquire about shipping prices for a package and made deposits into Mr. Duarte check account.

Mr. Silva, would testify the same and that went on a boat trip with Movant and Duarte in 2009. Mr. Silva also would have testified that Movant's marriage was in fact legitimate as he spent numerous times in the Movant's house during trips he made from Boston to Florida.

Another proof of the attorney's ineffective assistance provided to Movant was when the attorney attempted to force him to enter into a guiltyplea despite the Movant wishes to go to trial. Moreover, the attorney Doakes informed the Movant that the government had a document that would link the Movant to a specific package shipped under the alleged fraudulent account. This package, the attorney alleged was shipped from a bike store in California with the final destination in Brazil. Attorney Doakes claimed that she had contacted the bike store in California and asked the bike store whether they had done any business with the Movant. The bike store denied this. Attorney Doakes further alleged contacted the individual in Brazil, to whom the bike store sold unkown merchandise and shipped to Brazil. Yet, the individual denied ever doing any business transactions with the Movant or even knowing him.

The Movant than asked to review the documentation related to the California bike store package and the attorney stated that she didn't have it (BRADY). The Movant than asked the attorney whether she had investigated how the bike store shipped this package and which company was used to shipped to Brazil. No response was given by this attorney rather the attorney adivised that the Movant should consider entering into a plea because the government stated that they have away to link the package to Movant.

Here in this particular issue, the attorney failed to obtain important documentation from the bike store as well as from the individual in Brazil, thereby providing ineffective assistance to Movant.

Attorney Robert Abreu turned over all dicovery and case files to attorney Doakes. Among those files, attorney Doakes received the sworn affidavit and video from Osvaine Duarte which attorney Doakes' office made an official translation. The Movant asked attorney Doakes for a copy of the translated affidavit and the attorney denied the request.

Attorney Doakes failed to interview Osvaine Duarte who possessed numerous exculpatory document, despite many requests by the Movant.

The attorney further failed to inform the Movant his rights to obtain Duarte's compulsory material testimony under a Rogatory Letter. On another different occasion, the Movant was in a meeting with attorney Rhonda Anderson at FDC Miami in order to inquire the possibility of probono attorney representation. During this meeting, attorney Doakes was with other clients on the same floor at FDC Miami. Upon seeing through the glass wall that Movant was talking to another attorney (Ms. Anderson), Ms. Doakes barged into the room and began to engage into a verbal confrontation with attorney Anderson. Thus, knowing that Ms. Doakes had never provided the Movant with any effective legal assistance, now she precluded the Movant from possibly receiving probono legal assistance.

On one occasion, the attorney showed that she was more concerned with the Miami Heat game which she attended on the night before, than it anything substantial toward the Movant case as she engaged in this conversation with her investigator during this visitation at FDC Miami.

Movant contends that he was denied effective assistance by this attorney, in which violating his rights and such guarantee. Thus, the Movant sixth amendment were violated.

## B) CJA ATTORNEY LANCE ARMSTRONG

This particular attorney met with the Movant only two short occasions. On each occasion the attorney had no documents with him, no legal pad, or even a pen. He also informed the Movant that the federal judicial system is corrupt and that the conviction rates are 98%.

During the second visitation at FDC Miami on Sunday afternoon, the Movant noticed a strong smell of alcohol coming from the attorney who confessed to have being fishing on this day.

Nonetheless, no conversation in regards to discovery and witnesses took place. Rather, the attorney began to brag about how he had won his trial on another case.

Attorney Armstrong did not interview any witnesses nor did he attempt to interview any witnesses before the trial. The attorney did not inspect the government discovery or the Movant's file. In fact, 6 cds was proved to be empty during trial which clear shows that not one attorney ever inspect any discovery cd's. (see trial transcripts, DE-511 pg 42; DE-511 pg 126, DE-511 pg 128, and DE-470 pg 90-91).

The attorney further called the Movant's family for a meeting inside the Apple Bees restaurant in Hollywood, Florida in order to convience the Movant to plead guilty even known the attorney has never attempted to create a minimum possibility to a defense theory.

Based on the attorney's failure to prepare for trial, failure to interview witnesses, failure to provide the Movant with a investigator, failure to inspect the discovery cds so the Court could be properly informed that the same was empty, this attorney violated the Movant sixth amendment rights as he has provided the Movant with ineffective assistance and consequently the Movant was deprived of a fair trial.

Consequently to attorney Armstrong blunt and negligent conduct, the Movant requested the Court to withdraw the attorney from the case.

## C) CJA ATTORNEY STUART ADELSTEIN

The first meeting with this attorney was at Broward county jail in January 2013. The Attorney introduced himself and than informed the Movant that he would not file any motion for bail for the Movant and that he will review the discovery and talk to Movant on another day to dicuss on how proceed with the trial.

During the second visitation at FDC Miami, attorney Adelstein, after spending more than one hour with other seven clients, called the Movant inside the legal room to tell the Movant that he has received the discovery from the government which he was curently reviewing and further, would come back on the following week.

On the following week, the same scenario occurred. After spending hours with other clients, the attorney called the Movant and informed him that he has contacted the government office to request the discovery information. This, was despite suggesting in the previous week that the attorney was reviewing the discovery.

Nonetheless, the Movant provided the attorney with a witness list to be interview in order to obtain important material and exculpatory documentation. The attorney denied saying that he must review the discovery first. The attorney then began telling the Movant about FED conviction rates and that the Movant should consider to a guilty plea.

The Movant then asked the attorney to file a motion requesting bail which the attorney responded that Movant was facing 20 years and should make a deal to plea guilty. The Movant then requested the attorney to withdraw from the case. The attorney then changed the conversation and told the Movant that he would look into the possibility of bail. Instead to communicated with the Movant and to file a motion to Court for bail as was requested in many occasion, the attorney sent bail bondsman, Rodriguez, to the Movant's family apartment complex. Although no motion for bail was filed, the Bail bondsman took $16,000.00 from the Movant's family by stating that him and the Movant's attorney would get the Movant out on a $100,000.00 nebbia bond. Neither the motion for bail was filed or granted. The $16,000.00 was never returned to the Movant's family and

he was forced under this negligence and fraud, to endure two years incarceration without the right to bail. (NO MUCH TO SAY ABOUT FAIR PROCESS!).

The Movant than filed a lawsuit against the attorney and a motion for the Court to withdraw him.

Here in this case, attorney Adelstein had not interviewed a single witnesses nor attempted to do it. The attorney had not reviewed any discovery cd's nor had he attempted to do such. In fact, during the trial the Movant objected government introduction of summary spreadsheets which was introduced in violation of rule 1006 and because the cds were blank. (See, DE-511 pg 42, DE-511 pg 126, DE-511 pg 128, and DE-470 pg 90-91).

In trial the government even suggested that the Movant attorneys may have made a copy of the cds and give blanks to the Movant without inpected first. (See, DE-511 pg 130-132, DE-470 pg 93).

The Movant contends that this attorney provided him with no possibility of an effective defense. Thus, the Movant was deprivate to effective attorney assistance and consequently his sixth amendment rights clause of the U.S. constitution were violated.

### D) CJA ATTORNEY JASON KREISS

Attorney Kreiss was appointed as a standby counsel during the part of pretrial and during the trial.

As a standby counsel, he should be ready to take over the Movant's case whenever requested by the Movant or Court. ( See, UNITED STATES v. VAUCH ALEXANDER CROPPER, 2017 U.S. Dist. Lexis 53569, case no, 2:17-CR-030-VEH-TMP-1 (April 7, 2017)(Northern District of Alabama)).

Here in this case, sentencing transcripts clear show that the attorney had never inpected the discovery cds, interviewed any witnesses, or pursued any leads given by Movant. During the sentencing hearing, the attorney stated that the Court had not allowed him to prepare for trial. In fact, the sentencing transcript review that the attorney complained to Court that he was ordered not to review any discovery because he would not

be compensated. The Court then told the attorney that this is not correct, but that he was not prepared for trial.

The rule requires that during the trial the standby attorney shall sit behind the Movant and be available to answer questions from the defendant.

In this case, the standby attorney was order by the trial Judge to be seated in the back of the Courtroom. (See, DE-511:4-16-25, DE-511:5-13).

The attorney was not fully prepared for trial as he was required to remain so, as to take over the defense of the case. He should have acted in a purely capacity before trial.

The Movant contends that during a meeting at Palm Beach county jail, the standby attorney advised the Movant that he should not worry about trial because there were many violation in this case which would be reversed on appeal. Thus, the attorney did not make any attempts to inspect the case or even the cds which contained the unlawful inaccurate spreadsheets. Those spreadsheets ultimately, cost the Movant a high sentence. Had the attorney inspected the spreadsheets *FOR* accuracy as requested by the Movant before, or properly prepare himself for the sentencing hearing, there is substantial possibility that the Movant would have received a much lower sentence or even a new trial.

The Movant contends that he was deprived the right to a standby attorney during trial because the attorney was ordered to seat in the back of the Courtroom and during the trial he was seated in the back with his laptop working on his other cases.

For the sentencing, the attorney failed to inspect the discovery cds so he could appropriate object and inform the Court that the original records regarding the summary spreadsheets did not exist. Had the attorney inspected the cds, he would have proven to the Court that the summary was in fact, inaccurate and repeated.

Nonetheless, the attorney ineffectiveness cause the Movant to be sentenced, as a first offender, to the high end of the guideline level under numerous violations of the constitutional rights.

Despite many orchestrated and false hearsay statement made on record by the

attorneys, the record of this case cannot shows any evidence that the attorneys provided any tasks required by law.

The Movant further sent to all the attorneys by certified mail, a information affidavit as well as notice of default. The attorneys never responded. Hence, silence equates to truth. If this Court still stand-by justice, this conviction must be vacated and the case set to a new trial.

### III.   GROUND TWO: WHETHER THE APPEAL ATTORNEY INEFFECTIVE ASSISTANCE DURING THE DIRECT APPEAL VIOLATED THE MOVANT'S SIXTH AMENDMENT RIGHTS CLAUSE TO THE U.S. CONSTITUTION.

The appeal attorney failed to effectively appeal Movant's conviction. In fact, before filing his brief to the Court, the attorney did not review any important information provided to him by the Movant. The attorney had not inspected the accuracy of the spreadsheets and worse, lost part of the Movant's case file which the attorney himself admitted.

The Movant contends that the attorney provided him with ineffective assistance and consequently, the Movant was denied the opportunity to prove his innocence.

Subsequently to the attorney failed to effectively conduct the Movant's appeals, he denied the Movant the right to a fair and effective appeal. The Movant right to a effective attorney were violated.

Below are numerous ineffective assistance provided during the appeal by the attorney Klugh who refuse to include in his brief numerous other claims requested by the Movant.

### A) FAILED TO FILE A MOTION TO RELEASE PENDING APPEAL

The record and evidence shows that in many occasions the Movant requested attorney Klugh to file a motion for release pending appeal which is under the Movant's constitutional rights despite his eligibility or not. Hence, the attorney misled and lied to the Movant as well as failed to file such motion.

On July 9, 2014, attorney Cynthia Rodriguez came to FDC Miami to see the Movant.

During this meeting, the Movant provided attorney Rodriguez all the discovery cds which included those blanks, and requested the attorney inpect the accuracy of the summary spreadsheets. Also in the same meeting, the Movant provided the attorney with a motion for release pending appeal and requested the attorney Klugh to file such. No cds were inspected and no motion for bail was filed.

On November 17, 2014, the Movant sent to attorney Klugh an appeal brief and a motion for bail which the Movant drafted himself. The attorney reply on December 2, 2014 and stated that he would prepared himself a motion for bond and would sent for the Movant to review and approve. Once completed, he would filed said motion.

The attorney once again lied and failed to prepared and file any motion for bail. And on January 2015, the Movant again requested the attorney to file a motion for bond and also to include in his appeal brief the claims Movant had drafted himself before. The attorney responded that his first priority was to file the brief and once filed he would file the motion fo bond. This, depite that on December 2, 2014, he stated that would prepare the motion for the Movant review.

On September 25, 2015, the Movant again sent another letter to the attorney requesting him to file his motion for bond and that has been 17 months since the notice of appeal was filed and no motion of bond nor the brief was filed to the Court. On September 25, 2015, the attorney responded that it was not good idea to seek bond until at least the Court granted an oral argument in the appeal. This, despite that Movant request on many other occasions he wanted to exercise his rights to release pending appeal, and despite that the attorney himself stated that would filed it. Thus, the only thing the attorney has done here in this case, was lying to the Movant and misled him until the end of the appeal.

C) <u>ATTORNEY MISPLACED AND LOST MOVANT'S CASE FILE</u>

The case record and the appeal record clear shows that the attorney misplaced and lost important case files. In fact, when the Movant requested from the attorney his

entire case file, the attorney response was that he never had such. (See, Dkt. 607, 608, 610, 611 and 622)(see also, motion to compel attorney on appeal dkt).

The attorney admitted that did not have the Movant files at one point which clearly proves that the attorney did not inspect the discovery cds or files as requested by the Movant in order to prove that the summary was not accurate. (See attorney letter and motion filed under case no, 17-CV-62428-FAM exhibit 7).

The attorney failed to pursue important leads given by the Movant which would prove that the summary was not accurate and that the records did not exist.

The attorney lied and failed to allow the Movant to review the brief before it was filed into the Court as requested by the Movant on many occasions, by letter, phone and email. Worse, the attorney lied to have included the Movant claims in his appeal brief.

There can be no denial that this attorney was appointed to this case for a reason. The reason was not to defend the Movant or effectively appeal his conviction. The attorney malicious orchestrated plan to delay the appeal upon requested 7 frivolous extensions which unprecedente was granted by the Appeal Court. There is clear orchestrated conduct made in this appeal by the attorney and the government was to prevented all the violations be reviewed by the Appeal Court which consequenlty had lead to the conviction being affirmed.

D) <u>ATTORNEY FAILED TO REQUEST TWO LEVEL REDUCTION PURSUANT TO AMENDMENT 791</u>

On December, 15, 2015, the Movant filed a motion to reduce his sentence pursuant to amendment 791 after the appeal attorney refused to include in his appeal brief a relief that would reduce Movant's guideline by two level.

On December 23, 2015, the Court denied without allowing the Movant to exercise his due process rights to reply to the government allegations in opposition.

The appeal attorney knew that the Movant's conviction was not final since his direct appeal was pending and had clear knowledge that the Movant would be eligible for the two level reduction pursuant to amendment 791 of the finance table. He ignored and failed to request this relief under his appeal brief. Thus, the attorney clearly provided ineffective to Movant and consequently violated his sixth amendment rights.

### E) REFUSE TO APPEAL LOWER COURT DENIAL THE MOVANT'S COMPULSORY RIGHTS TO INTRODUCE WITNESSES

Before trial, the Movant submitted to the Court a list requesting the U.S. Marshals to subpoena his witnesses and which the Court granted after conducting material examination of each witnesses. All together, 40 witnesses were subpoenaed.

Four weeks into trial, the trial Judge called the Movant in Court to conduct again a material examination of his witnesses which was already granted and subpoenaed. The trial judge now denied the Movant his compulsory rights to bring to testify, 29 witnesses.

The Movant requested the appeal attorney in many occasions to appeal this violation. However, the attorney failed to do it. Thus, he provided the Movant ineffective assistance and the Movant sixth amendment consequently  were violated.

### E) GIGLIO VIOLATION

1) The attorney failed to appeal the immunity violation regarding the Movant´s wife's testimony in his appeal brief, as requested by the Movant.

2) RECRUIT CONVICT INMATE: The attorney failed to include in his appeal brief this other GIGLIO violation, in which a convicted inmate received a sentence reduction, who government recruited to sabotage the Movant defense, by suppressing important documents from his cell and to obtained important information for the government to used during trial. The appeal attorney failed to expolse this prosecutorial misconduct, thereby, he has provided ineffective assistance to Movant.

G) <u>THE ATTORNEY FAILED TO CHALLENGE THE MAIL FRAUD OFFENSE UNDER 18 U.S.C. § 1341 UNDER HIS APPEAL BREIF AS REQUESTED BY THE MOVANT</u>

The government alledged that the Movant comitted mail fraud by shipping thousands of packages to his clients without paying the shipping services to FedEx, UPS and DHL companies. Hence, those companies, under the 27 counts, have not suffer any losses, and are not the recipient for purpose of the mail fraud statute. The attorney failed to appeal this important issue, therefore providing the Movant with ineffective assistance.

H) <u>THE ATTORNEY FAILED TO INCLUDED IN HIS APPEAL BRIEF THE WRONGFUL ENHANCEMENT FOR OBSTRUCTION OF JUSTICE AND SOPHISTICATED MEANS AS REQUESTED BY THE MOVANT</u>

The Movant made available for the appeal attorney important information which would clearly shows that the Movant's enhancement for obstruction of justice and sophisticate means was imposed unlawfully and throughout continue bias in this case. Thus, the attorney failed to included this issue in his appeal brief, therefore, he has provided ineffective assistance to Movant.

IV. <u>GROUND III</u>: **WHETHER FBI AGENT VANBRUNT VIOLATED THE MOVANT'S COMPULSORY CLAUSE TO A FAIR TRIAL**

The appeal attorney Klugh failed to included in his appeal brief that the FBI illegal called an defense witness and went to the house of the other witness with the only intent to intimidat those witnesses and prevent them from testifying in trial. The attorney also failed to included the FBI agent perjured testimony given during the trial.

Mr. Ron Wolff free unhampered choice to testify was interfered by agent Vanbrunt illegally and unauthorized phone call to that defense witness which was already subpoenaed.

This particular witness would provide crucial important documentation which would clearly show that Osvaine Duarte, the person whos Movant used to ship all his packages, had in fact, used Mr. Wolff FedEx business account without authorization. Mr. Wolff reported this to the NYPD and Sand Spring PD.

In preparation for trial, the agent engaged in explicit, unconstitutional acts with the only intent to prevent the Movant from presenting exculpatory testimony of key witness.

Junio Silva, would have testified that the Movant always used different third party ship companies to ship sold merchandises to his online clients and further would confirm that Osvaine Duarte had been one of those companies. Moreover, Junio Silva would have presented evidence and testimony to affirmed that the Movant marriage was in fact, real. He would testify that aroung 2011 he spend two weeks with Movant in his house due the breakdown of the relationship with his wife Mollinedo.

Agent Vanbrunt entered Junio Silva house days before the trial and told him that he would have to testify against the Movant and if Junio refused the agent stated that he could force him under a federal subpoena. Although Junio Silva felt the intimination, he advise the agent that he would not help him against the Movant.

Before, living Junio Silva's house, the agent turned and told Junio Silva that with him or without him, he would make sure that the Movant would go to prison and after serving ther term imposed, he would be outside the prison waiting for the Movant to deport him from the United States. This, same statement was made to Claudia Scotton and Carlos Colon.

The agent made his promise and in fact, subpoenaed Junio Silva even after the Movant was already granted by the Court and had already been subpoenaed by the U.S. Marshals. The Court in the other hand, later denied the Movant from bringing Junio Silva to testify.

The agent also did not permit Junio Silva to enter the Courthouse on his date scheduled to testify. The Orchestrated conduct between the trial Judge and the agent has

prevented the Movant from bring excrucial inculpatory evidence and material testimony. Thus, the Movant was denied the compulsory rights under the fifth and sixth amendment to present witnesses defense in trial. His constitutional rights were violated.

## V. <u>ARGUMENT AND AUTHORITIES</u>

WHETHER THE MOVANT WAS DENIED EFFECTIVE ASSISTANCE BY ATTORNEY DURING PRETRIAL VIOLATED HIS CONSTITUTIONAL RIGHTS

The Sixth amendment clause of the U.S. constitution guarantee the Movant the right to effective assistance of counsel in criminal prosecution. See, <u>YARBOUGH v. GENTRY, 540 U.S. 1, 5 (2003)(per curiam)</u>; See also, <u>PADILLA v. KY, 130 S. Ct. 1473, 1480-81 (2010)(6th right to counsel is right to effective counsel)</u>; <u>MCMANN v. RICHARDSON, 397 U.S. 759, 711 N.14 (1970)(same)</u>. The right to effective assistance applies to both, retained and appointed counsel. See, <u>CUYLER v. SULLIVAN, 446 U.S. 335, 344-45 (1980)</u>.

The Movant contends that this guarantee rights entitle him also to effective counsel during certain post-indictment-identification procedures. <u>UNITED STATES v. WADE, 388 U.S. 218, 244 (1967)</u>. In <u>WADE</u>, the sixth amendment rights to effective assistance of counsel attaches to "critical stages" of pretrial proceedings. <u>388 U.S. at 244</u>. See also, <u>POWELL v. ALA, 287 U.S. 45, 57-59 (1930)(period arrangement to trial is "perhaps the most critical period of the proceedings" where defendant must have "sufficient time to advise counsel")</u>.

The Movant contends that in this case, attorney consultation with Movant was totally inadequate. The attorneys failed to prepare Movant's defense competently under the most tolerant standard of evaluation. The attorney failed to obtain legal relevant facts from Movant, his family and crucial witnesses. The attorneys failed to pursue obvious leads provided to them by the Movant, and failed to completely garner corroborating evidence for Movant's defense.

The Movant contends that in this § 2255 he has showed that the attorneys incompetence has precluded the jury from independently judging the merits of the

Movant's case. Thus, the Movant is zealously to establish how this Court was tricked into presiding over and participated in this orchestrated heinous injustice prosecution and wasted the public resource funds.

In this case, the Movant asserts that the Court appointed attorneys whom provided him with the barest of legal assistance which proved to be totally inadequate in his defense. Investigation work not carried out proficiently to explore the full extend and truth of the facts, lack of trial preparation, failure to inform the Movant of his rights including the right to obtain crucial witness testimony by means of a "ROGATORY LETTER". The attorneys ineffectiveness cause prejudice on the outcome of the case and deprive the Movant the right to a fair trial.

The attorney failed completely to garner corroborating evidence for the Movant to use to dispute government claims.

The entire record of this case clearly shows that the attorney omission and failure to exercise the skills and judgment of a competent criminal defense attorney. They did not act in a competent manner because no  adequate investigation took place, and the discovery was not reviewed despite numerous occasions the Movant had requested all the attorney to do it.  In fact, during the trial government introduced summary spreadsheets as evidence, in which the Movant objected to and stated that the summary never was provided to him prior to trial as required by rule 1006. (See trial transcript, DE-511:126-128-129; DE-470-90-93-94; DE-470:104-105). The government alleged that the summary and original business records was provided on the discovery cds.

The attorney incompetence was prejudicial to the Movant and truly prevented him from a fair trial WASHINGTON v. STRICKLAND, 693 F.2d 1243, 1259 (5th cir. 1992); GLOVER v. UNITED STATES, 531 U.S. 198, 201 (2001); WILLIAM v. TAYLOR, 529 U.S. 362, 396-91

---

1   Attorney Robert Abreu withdrew from this case for the reason the Movant could not afford to pay his investigator and stated that further investigation must be done in the case before trial. (See, withdraw hearing in front KMW in August, 2012.

(2006); UNITED STATES v. BRADELY, 42 OHIO St 3d 136 (1986); BLANKEN v. JONSON, 178 F.3d 312, 318 (5th cir. 1992).

The Movant asserts that he was denied the key elements including investigation and preparation during pretrial because his Court appointed attorney only offered as a defense, a plea agreement to avoid long prison time. RUMMEL v. ESTELLE, 590 F.2d 103, 104 (5th cir. 1975)(it is important to interview witness, adequate consultation, adequate investigation); GOODWIN v. BALCOM, 684 F.2d 794, 804-05 (11th cir. 1982); UNITED STATES v. PORTERFIELD, 624 F.2d 122, 124 (10th cir. 1980); WOOD v. ZAHRADRICK, 578 F.2d 980, 982 (9th cir. 1978).

The attorneys did not performed anyone of the above adequate essential tasks in this case. It is impossible for any attorney to prepare effectively for a trial without interviewing witnesses, reviewing evidence, records, discovery or any required task. The attorneys in this case constantly made promises that they knew to be false and engaged constantly to advise the Movant to plead guilty despite his wishes to prove his innocence at trial.

The Movant asserts that, if the Court for once decide into puting the bias aside and truly inspect the record of the case, the Movant's claims and evidences already submitted in his previously § 2255 dated, December 12, 2017, under the rules and laws, the Court would be able to have clear determination that Movant's sixth amendment rights clause to the U.S. constitution were violated. And since such violation is established, the Movant is entitle to relief without a showing of prejudice. COOPER v. FITZHARIS, 586 F.2d at 1328.

The actions of the attorneys concluded that the Movant was denied the right to effective defense and a fair trial. Thus, the attorney ineffectiveness acts prevented the fact-finder in this case from independently judging the merit of the case. UNITED STATES v. CAMPBELL, 616 F.2d 1151, 1152 (9th cir. 1980) cert. denied, 447 U.S. 910, 1000 S. Ct. 2998 64 L. Ed. 2d 861 (1980). No one single material motion in this case was filed by the attorneys. Worse, the attorneys misplaced the Movant's discovery,

evidence, personal files and important documents. Numerous crucial documents and evidence were misplaced and lost, including the letter and video from Osvaine Duarte, in which he admitted that he provided shipping services for the Movant business. Attorney Doakes had the translated letter which showed to Movant at FDC Miami, but refused to provide him with a copy when requested.

In one occasion, inmate housing on the same jail with Movant came back from the Courthouse (Broward) and informed Movant that an unidentified female had been seen shuffling through the Movant unsecure boxes containing his discovery and personal files which was left by attorney Adelstein unsafed at the Courthouse. This, despite that the Magistrate Judge Mattewman odered him to immediatly turn those files to Movant at FDC Miami. Instead doing that, maliciously, those file were dropped-off in open Court during a hearing next to the prosecutor table. Upon conclusion of the hearing, those boxes containing important and crucial evidenciary material were placed in a holding cell which the trial Judge though was a reasonable and proper place for the Movant to review discovery and prepar for trial as the Judge stated that she was been fair to the Movant. In the mean time, the prosecutor who has an office in the same building, was in her office with many assistance, computer, law books, and all the benefits to prepare for trial. To make this process fair, why the prosecutor are not placed in the holding cell also to prepar for trial to.

Nonetheless, this unprecedent acts cause numerous intimacy photos of Movant's wife Mollinedo to be taken from the boxes as well as a family photo album including numerous images that would clearly established the reality of Movant's marriage.

Here in this § 2255, the Movant has sufficient evidence to meet the initial burden of prejudice and inadequancies on counsel's performance which seriously have affected the outcome of the trial. WOUD v. HARDNICK, 578 F.2d 980, 982 (4th cir. 1978); WASHINGTON v. STRACKLAND, 693 F.2d 1243, 1258 (5th cir. 1982); STRICKLAND v. WASHINGTON, 466 U.S. 668, 687 (1984).

The Movant had no possibility of a proficient and effective denfense which had lead him to self representation because the attorneys denied him the right to a honest and

effective assistance. ZAKAZEWSKI v. MCDONOUGH, 490 F.3d 1264, 1267 (11th cir. 2007)(quoting IDEM. CAM v. GORE, 761 F.2d 1549, 1551 (11th cir. 1985).

The Movant contends that his rights to counsel is so preciously that it cannot be denied without violating his fundamental principles of liberty and justice which lie at the base of all civil and political institution. KIMMELMAN v. MORRISON, 477 U.S. 365, 375 (1986); MACMANN v. RICHARDSON, 397 U.S. 759, 771 (1970); POWER v. ALABAMA, 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 758 (1932).

A defense counsel must do his utmost to bring his legal acumen to bear on behalf of the Movant; keep him fully informed of development in the case and consult with the Movant on all major decisions to be made; conducted a reasonable investigation which should include contacting potential witnesses; prepare adequately and professionally for trial; and the bottom line, serve as a vigorous and devoted advogate on the Movant's case. U.S. EX REL PARTEE v. LANE, 926 F.2d 694, 702 (7th cir. 1991). And those rights extends to appeal. EVITTS v. LUCEY, 469 U.S. 387, 406, 83 L. Ed. 821, 105 S. Ct. 830 (1985); DOUGLAS v. CALIFORNIA, 372 U.S. 353 83 S. Ct. 814 (1963).

As mentioned above in this § 2255, the Movant's attorneys did not provide him with any reasonable assistance or any preparation for trial. Thus, he was forced to self representation upon withdrewal of attorney Adelstein from the case. The Court refused to provide the Movant another counsel and falsely acussed the Movant of not cooperating with the attorneys despite the case record not showing any material motion filed by the attorneys. If cooperating with Court appointed attorneys is accepted guilty plea despite innocence, or even despite the attorneys not conducting investigation, than the Court is right, the Movant could not cooperate with any one's attorney. Still, the Movant exercised his sixth amendment right in a criminal case and requested the Court for another attorney. The Court denied it.

The Movant asserts that he had never made a voluntary decision to represent himself. Therefore, the conviction and punishment of imprisonment in this criminal case is invalid because the U.S. constitution guarantee a lawyer to Movant who was in this

case, unlawful brought to trial. FARETTA v. CALIFORNIA, 422 U.S. 806, 832, 99 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

The Supreme Court observed in other cases that where a defendant vehemently asserts his rights, it is a decision to asserts one constitutional right instead of another. MARSHALL v. ROGERS, 133 S. Ct. 1446, 1449, 185 L. Ed. 2d 540, 544 (2013).

In this case, a COMPETENCE HEARING was never held as to proper test could be conducted to reviewed whether the Movant had competency to stand himself in trial or if the Movant was enduring any paranoid behavior for being placed in three different jails during two years prior trial or even any medication was affecting in any way the Movant capacitation to understading the law or stand in trial. The competence hearing never took place and the Court has never appointed any attorney to represent the Movant on a competence hearing to inquire the Movant competency. Thus, violated his sixth amendment rights. UNITED STATES v. FRANCISCO MARTIN, case no; 11-6544, 608 Fed. Appx. 340, 2014 U.S. app. Lexis 6387 (6th cir. 2015). Not one attorney has truly inquired or conducted a evaluation if the Movant, a citizen from Brazil, was competent to stand trail. And have the standby attorney inquire or evaluate Movant's competency to stand and trial without a lawyer, we would be here today. UNITED STATES v. BRYAN ROSS, (09-1952); and ROBERT BURSTON (09-1860)(Sixth Circuit 2012).

The Movant did not ever unequivocally invoke his sixth amendment rights to self representation because simply rejecting the representation of any one of the Court appointed attorneys with whom conflict was clearly established due to attorney refused to investigate the case or interview witnesses. The conflict has seriously inffected the Movant's case, to include attorney Adelstein who maliciously dropped off the Movant files unprotected in open Court. Among those conflicts, the Movant outlined the hearing held in front of Magistrate Judge Mattewman on July 2013, where the attorney himself made official threats to send the Movant to hospital:..."if we end up in a fight, one of us will go to the hospital and I assure you that will not be me" (easy to say when the Movant is in hadcuff and shackles).

(22)

The breakdown of communication and conflict between the Movant and attorney Adelstein began in the early stage of his representation and continued after the attorney together with bondsman David Rodriguez, conducted a orchestrated visitation to Movant's family in Margate, Florida and took $16,000.00 with promises to get the Movant out on a $100,000.00 nebbia bond. The attorney had never filed a bond motion to Court as the bondsman David Rodriguez complained and blame the attorney in his email sent to Movant at FDC Miami. David Rodriguez was later arrested in 2014 and charged in Broward County for the offense of 3rd degree theft and sentenced to five years probation and ordered to pay restitution to all victims including the Movant's family. However, it has been fiver years and not one single payment was even made. See, STATE OF FLORIDA v. DAVID RODRIGUEZ, 1401443CF10A. See also, ROGERIO CHAVES SCOTTON v. ADELSTEIN, 062013CA017359A, (Fla Cir. July 19, 2013).

The Court also contributed with the problem by abusing its discretion and ordered the attorney Adelstein to continue in the case as a STANDBY COUNSEL despite the Movant's lawsuit against the attorney which clearly established the conflict of interest. Later the Court also wrongfully repeated the error by withdrawing Adelstein as a STANDBY COUNSEL and appointed now as a STANDBY COUNSEL Chantell Doakes who the Movant had previously conflict.

To compel the Movant who was charged with a federal crime to undergo a pretrial with the assistance of an attorney with whom he had became embroiled in irreconcilable conflict was to deprive him of the effective assitance of counsel whatsoever. BROWN v. CRAVEL, 424 F.2d 1166 (9th cir. 1970).

In most cases, a claim of ineffective assistance of counsel is analyzed under the framework set forth in STRICKLAND v. WASHINGTON, 466 U.S. 688, 687 (1964), which requires a defendant to show a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different". Id. at 688, 694. However, where the record suggested or is clear that a criminal defendant has been in this case, his substantial rights were violated.

Both, the Supreme Court and the Eleventh Circuit have recognized that such claims should be analyzed under UNITED STATES v. CRONIC, 466 U.S. 685, 694-696 (2002); HUNTER v. MOORE, 304 F.3d 1066, 1069-1070 (11th cir. 2002). The Movant needs no reason in this § 2255 to specifically show prejudice when he was completely denied counsel at a critical stage his case is "so fundamental" a right-so essential to any fair proceeding-that its complete denial is never harmless. CHAPMAN v. CALIFORNIA, 386 U.S. 18, 23 N. 8 (1967). In fact, the Supreme Court held in CRONIC that such circumstances "are do likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified". 466 U.S. at 648. The denial of counsel at any critical stage of a proceeding renders the proceeding inherently "unfair". Id at 659.

The Movant asserts that all the attorneys did not provide him with the minimum effective assistance, because no investigation was ever undertaken, no discovery was ever reviewed which included the fact that numerous cds were blank and the summary spreadsheets was inaccurate. The attorney did not interview any witnesses which included Junio Silva, Ron Wolff, Samara Moreira, and others.

The Movant is now hereby requesting under this § 2255, that the Southern District of Florida Court to put the bias aside in the interest of justice and meaningfully review all facts, records and evidence under this § 2255 as well as the entire case, and without allowing anyone to put their thumb to tip the scale of justice, let all the violation in this particular case be reviewed under the current laws and for once stop this travesty of justice that has beset Movant for over seven years.

### WHETHER THE APPEAL ATTORNEY INEFFECTIVE ASSISTANCE DURING THE DIRECT APPEAL VIOLATED THE MOVANT'S SIXTH AMENDMENT RIGHTS CLAUSE TO THE U.S. CONSTITUTION

The Movant contends that during attorney Klugh's legal representation in this case, he once only visited Movant for five minutes a FDC Miami where he asked the Movant what he did to the Judge in order to receive such harsh term of imprisonment as a first time offender. Nothing in this meeting helped the case or attempted to help the case. After

the attorney spend one hour with all his other clients, he come up to the Movant and introduced himself as the counsel who was appointed by the Court to handle the direct appeal. The attorney informed the Movant that he would talk to him on the following day. This never occurred.

Adequate consultation between attorney and client is an essential element of competent representation of a criminal defendant. COLES v. PEYTON, 389 F.2d 224, 225-26 (4th cir. 1968), cert. denied, 393 U.S. 849, 89 S. Ct. 80, 21 L. Ed. 2d 120 (1968). See also, ADAMS v. BALKCOM, 688 F.2d at 124. While the amount of consultation required will depend on the fact of each case, the consultation should be sufficient to determine all legal relevant information known to defendant.

Given the nature of this case and Movant's self representation during part of pretrial and trial as well as the numerous undeniable violations, the necessity for extensive consultation and/or communication between the appeal attorney and Movant was obvious and necessary. The Movant was familiar with the case, the inaccuracy of the summary spreadsheets, the contradictory and prejured testimony given by government's witnesses, the Movant's familiarity with fact set forth in numerous violation, he would have been able to provide insight into the accurancy and veracity of the case.

The communication with the Movant was also essential to prepare and give in put to the appeal brief and to obtain important information as to the most likely sources of physical and material evidence which would corroborate his appeal.

Given the facts and evidence under this § 2255 and the attorney's lack of consultation with Movant, which was totally inadequate during the entire pedency of the direct appeal. The attorney had not taken into consideration any leads given by the Movant or inspected the accuracy of the summary spreadsheets unalwfully presented in trial by the government.

The attorney lied and misled the Movant during the entire appeal which made the Movant believes that he was appointed with the only mission being to, sabotage the appeal and to pursue personal motivation. In fact, the appeal was affirmed. The attorney

promised to review the Movant's draft brief and motion to release, insert his claims in the final appeal brief, and allow the Movant to review the brief appeal BEFORE IT WAS FILED with the Court. He lied and also misled the Movant with regarding to laws and rules including the VERBAL AUDIO RECORDINGS to correct the transcripts. Here in this case, one can only believe that this attorney was intentional appointed to this case and was instructed to sabotage this appeal when it is so clear to see to many deprivation of rights in this single defendant case.

### A) FAILURE TO FILE A MOTION TO RELEASE

The right to consideration of bail pending appeal exists after conviction. UNITED STATES v. BALLONE, 762 F.2d 1381, 1382 (11th cir. 1985)(per curiam)(defendant "right" to bail pending appeal could not be assessed until after conviction). And bail pending appeal need not determine whether it is likely that the defendant actually will prevail. UNITED STATES v. GIAGOLA, 754 F.2d 989, 901 (11th cir. 1995). However, despite that on many occasions the Movant asked the appeal attorney to file a motion to release pending the appeal, attorney Klugh lied with false promise to file but failed to do so. Consequently, as a result of attorney's inappropriate behavior, the Movant's constitutional rights were violated. Had the Movant been released he would have gained exculpatory evidence, reviewed documents, protected his family from being ripped-off by $65,000.00 from attorney Kristy Figueroa Contreras[2] who promised to withdraw attorney Klugh from the case and effective appeal the case, and most important, add his imput to the appeal brief. Although is it the Court final decision to granted bail or not, attorney Klugh prevented the Movant from exercising his due process rights which consequently violated the Movant's constitutional rights.

---

2 The Movant filed two motion to this Court in regarding the attorney Contreras unlawful taken money from the Movant without signed contract and the false promises to representation during the direct appeal. These motions still today pending in the dkt.

B) <u>TRANSCRIPT VERBAL AUDIO RECORDING</u>

On December 23, 2014, the Movant sent to attorney Klugh a letter after finding errors ad manipulation in the trial transcripts which the Movant requested attorney Klugh to correct by using the verbal audio recording. Instead of do what the law require the him to do, on November 3, 2014, the attorney again engaged doing lies and continued to exercise his sinister plan by telling the Movant that in federal Court there is no VERBAL AUDIO RECORDIG. See, <u>MICKENS v. TAYLOR, 535 U.S. 162, 166 (2002)</u>; <u>SARROCA v. UNITED STATES, 250 F.3d 785, 787-88 (2nd cir. 2001)</u>; <u>FLORES-ORTEGA, 528 U.S. at 480</u>; <u>BLANKENSHIP v. JOHNSON, 118 F.3d 312, 318 (5th cir. 1997)</u>; <u>REYNOLOS v. CHAPMAN, 253 F.3d 1337, 1347 (11th cir. 2001)(conflict of interest affected performance because was prevented from raising reasonable defense in defendant's favor)</u>.

Attorney Klugh performance fell below to objective standard of reasonableness, and his performance prejudiced the Movant, resulting in an unrealiable and fundamentally unfair outcome of the appeal. <u>STRICKLAND v. WASHINGTON, 466 U.S. 668, 687-88 (1984)</u>; <u>GLOVER v. UNITED STATES, 531 U.S. 198, 201, 204 (2001)</u>; <u>VIRGIL v. DRETICE, 466 F.3d 598, 613 (5th cir. 2006)</u>; <u>GENTRY v. SERVIER, 547 F.2d 838, 857-52 (7th cir. 2010)</u>.

The attorney failed to correct the trial transcripts including the cross-examination of Movant's wife and the numerous errors which cleary demonstrated the Court reporte's difficulty in understand the Movant accent. The attorney failed to inspect and review the discovery evidencing and documents given to him which clearly demonstrated that the attorney did not have the best interest in defending the Movant by only offering his orchestrated ineffective assistance during the appeal.

C) <u>ATTORNEY MISPLACED AND LOST MOVANT'S CASE FILE</u>

On Many occasions after the appeal Court confirmed the conviction, the Movant asked the appeal attorney to return all the case files including the discovery. The attorney claimed that he didn't have any of these requested material which clearly demostrated that the attorney had never reviewed anything as requested prior to filling his worthless

appeal brief. The attorney only relied on the manipulated transcripts of trial to appeal the conviction and did not bother to inspect the inaccurate unlawful summary spreadsheets. The attorney knew from day one when he took this case that his representation was given intentional ineffective. STRICKLAND v. WASHINGTON, 466 U.S. 668, 687-88 (1984). By refusing to inspect the case files and discovery including the inaccuracy of the government's summary evidence, the attorney failed to included in his brief numerous BRADY issues, which consequently precluded the Movant to a fair appeal.

Amoung those BRADY issues, the attorney failed to argue as requested by the Movant, that during the detention hearing on March 29, 2012, the prosecution showed to Court an undated and unsigned letter purporting to be a final denial decision from the U.S. Citizenship and Immigration Services order denying  the Movant's I-485 application. However, NO DECISION FROM IMMIGRATION WAS ISSUED AT THE TIME OF THE HEARING, MARCH 29, 2012. Also the magistrate Judge Snow's detention order stated that according to the information given by ICE, the Movant was current appealing his I-485 application.

On Numerous occasions, the Movant request that documents refered by the Magistrate Judge which stated that the Movant was, before the hearing, appealing his I-485 denial. The information was never provided as requested by the Movant.

Attorney Klugh was requested to appeal this BRADY violation during the direct appeal because the government used the Movant's immigration issue and his pending INS application to make the Court deny his right to bail.

Furthermore, the government alledged that the Movant had gave false statement in his I-485 application and unlawfully charge the Movant twice for the same offense as to count 28 and 29.

Attorney Klugh was asked to inpect the Movant's A-file which are redacted and to compel the government to turn over the missing BRADY information.

The A-file may have contained exculpatory evidence that the government had never handed over to the Movant, thereby undermining his due process rights and undermining the

integrity of the trial. <u>MONROE v. ANGELONE, 323 F.3d 286, 300 (4th cir. 2003)(undisclosed evidence favorable to accused because it could have been used to impeach government witnesses)</u>; <u>UNITED STATES v. BLAND, 517 F.3d 930, 934 (7th cir. 2008)(material related to accused would impeach creadibility)</u>.

The government withheld information contained in the A-File undr 5 U.S.C. § 552(b)(3), (b)(6), (B)(7)(C) and (B)(7)(e).

because the goverment accused the Movant as set forth in  count 28 and 29, he is entitled to have a complete record of all documents from his A-File.

Attorney Klugh failed to included in his appeal brief this <u>BRADY</u> violation and failed to compelled the unredacted A-File.

Attorney Klugh failed also to include in his appeal brief, as requested by the Movant, the blank cds discovery which goverment alleged to have the summary spreadsheets and original business records. (See, DE-511:126-127-128-129; DE-470:92-93-94; DE-470:104-105).

The trial Judge ordered the government during the trial to provide the Movant with new cds to replace those blanks. Thus, because the Movant was never afforded reasonable time and place to inspect the summary spreadsheets for accuracy, the introduction of the summary were made unlawful and consequently the Movant was deprived to a fair trial. Those summary spreadsheets introduced in trial were seriously prejudice against the Movant because they tremendously increased his term of imprisonment based on inaccurate evidence.

Despite that the trial Judge falsely mentioning on record that the government had given the business records to Movant, the cds itself show that was not given to Movant. In fact, witnesses testified that the business record did not exist. Hence, the appeal attorney never inspected the cds as requested by the Movant nor had inspected the accuracy of the summary spreadsheets. Thus, he failed to appeal this issue, thereby, the attorney provided ineffective assistance during the direct appeal.

Moreover, the government alledged that the Movant had created unauthorized FedEx

account under the name of a New York based company named B&H Photo Video. In reality, the account was legitimately opened by the owner of B&H Photo Video in 2001. And was opened before the Movant established his online business. B&H Photo Video, had a similar website to Movant. In fact, B&H Photo Video website contained pages in Portuguese and also had shipping service to Brazil. The government's own witness testified that knew the account was legitimately opened by B&H Photo Video company. (See, DE-475:38-39; DE-475:28-29).

Under the government spreadsheets "B&H Photo Video account", there was **73 invoices mentioned** of packages alleged to have been shipped by the Movant. Among these 73 invoices mentioned, there was **93 REPEATED INVOICES** under the B&H Photo Video summary spreadsheet. Thus,there is not business record that would validate the spreadsheets or any record that instead of the B&H shipping packages under they own account, the Movant has used they account.

Attorney Klugh failed to included this troubling and serious BRADY v. MARYLAND, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), in his appeal brief, nor have the attorney attempted to inspected the inaccurate goverment summary spreadsheets.

### D) ATTORNEY FALIED TO REQUEST TWO LEVEL REDUCTION PURSUANT TO AMENDMENT 791

The Movant contends that on many occasions he request his attorney to argue during the appeal process the two level reduction on the changes to the monetary table pursuant to § 2B1.1.

The Movant contends that a conviction becames final once the judgment is rendered and the defendant exhausts all direct appeal, and the time for filing a petition for certiorari on direct review lapses. TEAGUE, 489 U.S. at 295 (citing ALLEN v. HARDY, 478 U.S. 225, 258 n.1 (1986)(percuriam)). See also, PENRY v. LYNAUGH, 492 U.S. 302, 314-15 (1989) a brogated on other grounds by ATKINS v. VIRGINIA, 536 U.S. 304 (2002); MCCLOUND v. HOOKS, 560 F.3d 1223, 1229 (11th cir. 2009). Thus, had the attorney included in his appeal a brief to this claim, the Movant's sentence would have been reduced and the Movant could have been released from prison. Because the attorney failed to effectively

appeal this case, the attorney's ineffectiveness made the Movant endure unnecessary incarceration time. Consequently to this failure to provide effective assistance, the Movant's sixth amendment rights were violated.

### E) REFUSE TO APPEAL THE LOWER COURT DENIAL MOVANT'S COMPULSORY RIGHT TO INTRODUCE WITNESSES

The Movant had requested his appeal attorney to appeal the Court's denial of the Movant rights to compulsory introduce 29 witnesses to testify in trial. The Judge abused her discretion when she denied the Movant his 29 subpoenaed witnesses by saying that the jury was seating on trial to long and that she had already seen the government's case which there was no reason to bring 29 witnesses to testify. Here one can only believe that GUILTY VERDICT was reached already despite the Movant not presenting his case. The trial judge engaged in explicit and unconstitutional act to prevented the Movant from his substantial rights to present witnesses. Once, again, the appeal attorney failed to appeal clear violation that occurred in this case.

### F) GIGLIO VIOLATION

Pursuant to 18 U.S.C. § 6001 and § 6003, immunity in exchange for testimony to the government witness can only be obtained if granted by the Court. UNITED STATES v. DONAHERY, (19761 CAS FLA) 529 F.2d 831, and the government must provide a defendant with the list of all witnesses that were granted immunity before trial. UNITED STATES v. BRIGHTON BLDG & MAINTENANCE CO., 434 F. Supp. 222, 1977 U.S. (1977).

The Movant contends that he had asked the appeal attorney to included in his appeal brief the GIGLIO violation whic occurred in this case during the Movant's wife cross-examination. (See, DE-474:22). When the Movant inquired about immunity for his wife, the government objected and the Court called sidebar. (DE-475:22). At sidebar, the government denied to give immunity to Movant's wife despite the fact that Movant introduced as evidence, a letter with the government on August 26, 2013, attached to a plea agreement offered to Movant. (See, DE-474:22; DE-474:23). Later, after the government ended the

cross-examination of Movant's wife, the trial Judge called another sidebar and further, engaged in telling the government to correct the misconduct which occurred in front of the jury. The prosecutor then began to engage in numerous questions leading the Movant's wife to anwser and convince the jury that immunity was granted despite that the government's denial. (DE-474:22-23). The Movant objected the sideshow and the perjury testimony. Thus, in the end, the Court allowed the jury to believe that immunity was granted to Movant's wife, despite the government's denial. The Movant was denied fair trial and a guilty verdict was imposed even before trial began.

In this case, the government duty to present all material evidence before trial was not fufilled and the Movant due process rights were violated. NAPE v. ILLINOIS, 36 U.S. 264, 3 L. Ed. 3d 215, 83, S. Ct. (1963).

The Movant vigorously cross-examinated his wife seeking to discredit her testimony by revealing the possible agreement or arrangement for leniency in any possible offense. The trial Judge did not undertake to resolve the conflict of the government letter mentioned immunity and the fact that the Movant was still married to Ms. Mollinedo. Thus, the Movant due process was violated. The immunity was not requested from the attorney general or designate office of the DOJ. UNITED STATES v. DODDINGTON, 822 F.2d 818, 1987 U.S. app. 885 (1987). Hence, the record and the statement given by both, the prosecutor and Ms. Mollinedo reflected different facts from what the Court allowed the jury to believe. UNITED STATES v. HOOK, 848 F.2d 785, 1988 U.S. appx Lexis 7966, 88-1 (1988).

In this case, immunity did not follow justice department guidelines and consequently Movant's constitutional rights were violated.

## 2) RECRUIT CONVICTED INMATE

The Movant contends tha he requested his appeal attorney to included this issue in his appeal brief which the attorney ignored and failed to do so.

A proffessional snitch, John Jackson, Movant ex-cell-made at FDC Miami 10-E, had received in two previous occasions a sentence reduction based in two motions of rule 35

file by the government. Jackson, was recruited by the government with the sole purpose of sabotating Movant's pro se defense by taking from Movant boxes of important documents and to provide information on the Movant's preparation including his witnesses list. Jackson have suppress numerous exculpatory document from Movant's cell and provide such to the FBI agent Vanbrunt. In fact, upon receiving the witnesses list, three of the defense witnesses received visitation from the agent and subsequently became the government witnesses under intimination.

Jackson was previous sentenced to 97 months imprisonment for health care fraud and ordered to pay over eleventh million in restitution. He served only 22 months before re-sentenced to time served after receiving two motions under rule 35 filed by the government.

This type of prosecutorial misconduct justifies the reversal of the conviction and dismissal of the case where it so to infected the trial with unfairness as to resulting the conviction denial of due process. BARDEN v. WAIERIGHT, 477 U.S. 181 (1986)(quoting DONNELLY v. DE. CHRISTOFORO, 416 U.S. 637, 643 (1975)).

The record and evidence clearly established that agent Vanbrunt was in communication with Jackson. In fact, unlawfully the agent entered the Movant's Mother's apartment complex walked to the second floor without a search warrant, entered the storage room and took the DVR containing the Movant's intimacy video with wife Mollinedo.

The Movant contends that he had provided this information to the appeal attorney which included the affidavit of two other inmates who had knowledge of Jackson taking documents from Movant's box and handing such to FBI agent during the visitation at FDC Miami. Thus, the appeal attorney provided ineffective assistance during the direct appeal and consequently, the Movant's sixth amendment rights were violated.

H) THE ATTORNEY FAILED TO CHALLENGE THE MAIL FRAUD OFFENSE UNDER 18 U.S.C. § 1341

The Movant contends that the government wrongful alleged that Movant committed

mail fraud under 18 U.S.C. § 1341 because FedEX, UPS and DHL are not the recipient for purpose of § 1341.

The Movant ran a legitimate registrade internet retail store under his own name throughout the Brazilian community and in Brazil where none of his clients have evern been defrauded or have ever lodged a complaint against the Movant. The allegation on the indictment however, stated that the Movant used FedEx, UPS and DHL shipping service to ship to his retail clients packages without "paying the shipping cost". As such, it is no surprise that the jury was confused about this entire orchestrated prosecution and sought guidance from the Court as to what crime had actually been committed during the deliberation and after of five week of trial. There was no record that a explanation in response to their questions addressed in a note were given. UNITED STATES v. HEWERS, 729 F.2d 1302, 1320 (11th cir. 1984); UNITED STATES v. HASSON, 333 F.3d 1264, 1270 (11th cir. 2003).

The Eleventh Circuits holds that, "[t]he mail fraud statute 18 U.S.C. § 1341, does not define what constituted a scheme to defraud. In the absence of a statutory defination, the Court had provided a judicial framework for conceptualizing a fraud scheme". BRADLY v. UNITED STATES, 644 F.3d 1213 (11th cir. 2011)(citing UNITED STATES v. PENDERGRANFT, 297 F.3d 1198 1208 (11th cir. 2002)("[t]he meaning of such scheme to defraud has been judicial defined").

In defining a scheme to defraud, the judiciary did what congress could not effectively legislate bills of attainder any ex post fact of law.

Therefore, congress's aboication of its duty to define criminal conduct resulted in the judiciary creating a typical-for-lawyers imprecise definition of a scheme to defraud as a "reflection of normal uprightness of fundamental honest, fair play, and right dealing in the general business life of a member of society". BRADLEY, 644 F.3d at 1240(quoting GREGORY v. UNITED STATES, 252 F.2d 104, 109 (5th cir. 1958) which inturn quotes (HAMMERSCHITIMAT v. UNITED STATES, 265 U.S. 182, 188 (1924). In fact, the judicial defines a fraud as what 12 members of a jury believes is fair. A paradigmic

example of vague; a definition that charges with each jury. More precisely, the definition is even more amorphous, because the element's definition really is determined by what a panel and honest dealing in a particular community or trade.

To be sure this system-all-system on the experience, intellect, and common sense of human being to decise uncertain facts. The hallmark of facts is they can a last theoretically be proved or disproved, and minimally the must be subject to prood. The concepts of fair play and honest dealing are more fluid and not subject to proof.

In this case, the Court could not more identify the boundaries of a fraud than congress could. Thus, the Court adopted notary, and "it depends" analysis, but transferred responsibility for defining the crime allegedly to the jury. In fact, the jury note submitted during deliberation has presented substantial doubts and failure to finding the elements of crime which was alleged on the indictment. Thus, the judiciary's slippery definition had the effect of kicking the can down the road to the jury. The jury now decides what legislated fraud is; whaterver the jury believes is not morally uprigh or is unfair or is dishonest. Although for the first amendment concerns it may be all right for the finding facts to decide what something is when "they see it".

Here in this case, the government failure to provide a proper, precise definition of scheme to defraud invalides the fraud statutes as being impermissibly vague, forcing a jury to make a post hoc finding about what is a scheme to defraud. Thereby, making arguably legal conduct criminal; and more abstractly permitted 12 unelected-citizen-to-define-criminal-conduct; and impermissible (unconstitutional) delegation of legislative duty.

The Movant challenges his conviction under 18 U.S.C. § 1341 because it was not "money and property" within the meaning of the mail fraud statute. Rather, here in this case the government lodged allegations of billing issue which the companies failed to present the detailed business records or have made any attempt to collect any outstanding invoices from the Movant. UNITED STATES v. LONEY, 959 F.2d 1222, 1337 (5th cir. 1992). Following the logic, the mail fraud would not extend to a fraudulent scheme

to include a seller to sell a product at a discounted but still profitable price because the seller would not have made any profit at all but for the fraud. However, in this case, the government alleged that on 27 occasions, the Movant shipped 27 packages under his own accounts or others entitled accounts without authorization and CAUSE THOSE 27 PACKAGES TO BE DELIVERD which allegedly caused losses for the companies. However, those 27 packages refer to the 27 counts was presented in Court during trial. Thus, those packages were not delivered as alleged and therefore, could not cause a losses or be considered a loss for those companies.

The government failed to prove lossess or mail fraud under § 1341. In fact, the amount derived from the calculation is clearly in error. The Court used the face value based on unverified and inaccurate spreadsheets and contractory testimony.

The Supreme Court has held in other cases that § 1341 properly defined a criminal scheme to defraud that involved bribes or kick backs. Thus, intent to defraud by causing mail to be delivered based on allegation that the shipping service used was not payed does not falls under § 1341.

Furthermore, the jury instruction given in this case are invalid under § 1341. YATES v. UNITED STATES, 354 U.S. 298, 312 77 S. Ct. 1064, 1 L. ed 2d 1356.

Pursuant to SKILLING v. UNITED STATES, 558 U.S. 130 S. Ct. 393, 175 L. Ed. 2d 267 (2009), the Movant's conviction could not stay and the indictment rested in part, on an improper construction of "mail fraus" to defraud by causing mail to be delivered only based of billing issue. See, 18 U.S.C. § 1341. Compare SKILLING where it is similar present in the case. In this case, the government and appeal attorney advise and interpretation of § 1341 previously rejected by the Supreme Court's opinion in SKILLING. During the trial, the government rendered two theories that in not a finding factual element of crime under the meaning of mail fraud. Whether shipping account was used or created to be used without authorization,  these is related to a billing and does not rank the purpose under § 1341. YATE v. UNITED STATES, 354 U.S. 298, 312, 77 S. Ct. 1064, 1 L. Ed. 2d 1356(1957); SKILLING v. UNITED STATES, 556 U.S. 130 S. Ct. 393, 175 L. Ed. 2d 267

267 (2009); <u>WEYHRAUVH v. UNITED STATES</u>, 97 L. Ed 2d 292, 483 U.S. 350 (1987).

<u>THE INDICTMENT FAIL TO STATE AN OFFENSE</u>
<u>(FED. R. CRIM. P. 12(b)(3)(B)</u>

Federal Rule Criminal Procedure 12(c)(1), states that an indictment must be a "plain, consice, and definite written statement of the essential facts costituing the offense charged.

The Movant contends that the indictment in this case fails to state a offense under § 1341. There is numerous contradictory allegations lodged on the second superseding indictment which the Movant attorneys had failed to investigate and dispute.

On page five of the indictment, the government alleged that the manner and means by which the scheme and artifice was accomplished including that Movant would offer merchandise through his internet retail website. However, the allegation fails under § 1341 because none of the recipient was deprived of property or money in this case for purpose of the statute.

Furthermore, the allegation also included that the Movant would open accounts with FedEx, UPS and DHL under names of established companies and use those accounts to ship packages for his online clients.

The indictment also alleged that the Movant would open accounts with FedEx UPS and DHL under his own name which he incur large bills and would not pay the invoices.

The Movant contends that those allegations also failed in the regulatory hands. See, 18 U.S.C. § 1341.

The Movant contends that on page 7 of the second superseding indictment, the government alleged that the Movant, for the purpose of executing and in furtherance of the scheme and artifice, did knowing <u>CASE TO BE DELIVERED</u> certain matters and things by private and commericial interestate carrier.

As mentioned before, those 27 counts were presented in Court, therefore, the theory of been delivered is false. Moreover, there is no lost amount mentioned from those 27

counts (packages) under the indictment nor in the inaccurate spreadsheets whatsoever. Thus, these 27 counts failed under § 1341 because 1) for the furtherance of the scheme the 27 counts alleged to be mailed failed for the purpose of § 1341 since FedEx, UPS and DHL are not the recipient; 2) the 27 counts were never delivered and therefore lost amount did not exist for purpose of § 1341, and 3) numerous allegations on the indictment is contradictory including count 2, citix account, B&H Photo video aacount and Rio Motor Sport Account and others allegations is false.

as mentioned above, count 2 alleged that a package was shipped before under a account before the account was even opened. Also the alleged account under Rio Motor Sports mentioned that the first packaged shipped after the account was in fact, closed. Thus, those allegations was presented to the jury and are founded to be false and fail under § 1341 for purpose of the statute. CARL W. CLEVELANS v. UNITED STATES, 531 U.S. 12, 148 L. ed 2d 221, (2000).

In this case, the government reading of § 1341, invites the Court to approve expansion of federal criminal jurisdiction in the absence of a clear statement by congress. Equating, issuance of a shipping account or shipping services with depravation of property would subject to federal mail fraud prosecution a wide range of conduct traditionnally regulated by authority. Unless congress convenys it purposes clearly, this Court cannot read a statute to significant crime. JONES v. UNITED STATES, 529 U.S. 548, 858, 46 L. Ed. 2d 902, 120 S. Ct. 1904.

The government allegation on the indictment contradicted the statute which stated "any scheme or artifice to defraud" and "any scheme or artifice...for obtaining...property by means of false...represention". Proceeding from those arguments, the government unconstitutional arguments that shipping accounts is property. Hence, MCNALLY refuse to construe the two phrases indentifying the prescribe scheme independently. 483 U.S. at 358, 97 L. Ed. 2d 242, 107 S. Ct. 2875. Indeed, MCNALLY explained that § 1341 had its origin in the desire to protect individual property right and that any benefit the government derives from the statute must be limited to the

(38)

government interest as property holder. Id, at 395 N8, 47 L. Ed. 2d 292, 107 S. Ct. 2875. Shipping services does not qualify as "property" within § 1341 compass. I does not suffice, we clarify, that the object of the fraud may became property in the hands of the currier companies. UNITED STATES v. SHOTTS, 145 F.3d 1289, 1296 (CA11 1998); UNITED STATES v. SCHWARTZ, 924 F.2d 410, 418 (CA21941); UNITED STATE v. GRANBERRY, 908 F.2d 278, 280 (CA8 1940); TOULABI v. UNITED STATES, 875 F.2d 122, 125 (CA 1989) UNITED STATES V. DADANIA, 856 F.2d 1391 (CA9 1988). Although the government relies in part on the assertion that the Movant obtained property by means of false representation from FedEx, UPS and DHL by using their shipping services without paying, there is nothing in the charges that requires such finding.

The congress intent in the use of mail fraud statute was to prevented the used of mail in furtherance of such scheme. UNITED STATES v. BASS, 404 U.S. 336, 347, 30 L. Ed. 2d 488, 92 S. Ct. 515 (1971). There is no construtive offense in this case. And before punishes the Movant by sent him to prison to serve a 108 onths term, the Court should have reviewed first those contradictory allegations set forth on the second superseding indictment and the inaccurate spreadsheets because this case is plainly within the statute. FASULO v. UNITED STATES, 272 U.S. 620, 629, 71 L. Ed. 443, 47 S. Ct. 200 (1926).

The Movant contends that none of the Court appointed attorneys have inspected or argue the contradition set forth on the indictment or in the inaccurate summary spreadsheets which is now at bar for review. The Movant asserts that he had received ineffective assistance by all attorneys and that the attorneys ineffective assistance violated his sixth amendment rights clause of the U.S. constitution.

<u>WHETHER THE FBI AGENT VANBRUNT VIOLATED THE MOVANT'S</u>
<u>COMPULSORY CLAUSE TO A FAIR TRIAL</u>

The Movant contends that requested his appeal attorney to included in the appeal brief that agent Vanbrunt had intimidated witnesses and consequently the Movant was denied

fair trial. The attorney failed to do so.

The compulsory process clause of the sixth amendment rights provides that "[i]n all criminal prosecution, the accused shall enjoy the right...to have compulsory process for obtaining witnesses in his favor". U.S. CONST. AMEND. VI. The right to compulsory process encompasses "[t]he right to offer the testimony of witnesses, and to compel their attendance if necessary". WASHINGTON v. TEXAS, 388 U.S. 14, 19 (1967).

In this case, agent Vanbrunt engage in explicit uncostitional acts with the only intention to prevent the Movant from presenting exculpatory testimony of key witness Junio Silva by telling him that he has to testify against the Movant as he is guilty. When Junio Silva disagred to testify and mentioning that the Movant has done nothing wrong, the agent intimidated and threatened Junio Silva by saying that he would focer him under a federal subpoena and that he was forbidden to talk to the Movant. Moreover, before living Junio Silva's house, the agent told Junio Silva that with him or without him, he would make sure that the Movant would go to prison and after serving his term, he would be outside waiting to deport the Movant from the United States.

The agent made the same statement to Claudia Scotton and Carlos Colon. Those witnesses free unhampered choice to testify was interfered by agent Vanbrunt.

The Movant also contends that agent Vanbrunt made false report about Junio Silva in order to make the Movant withdraw the witness by making the Movant believe that Junio Silva was against him. Recently, the agent's report was showed to Junio Silva who denied ever making any negative statements toward the Movant which was evident in agent's report.

The agent further called another witness without authorization in order to prevent this witness from testifying. (See, DE 478:56).

Defense witness Ron Wolff's free and unhampered choice to testify was interfered by Vanbrunt's illegal and unauthorized intimination phone call to the witness.

> SCOTTON: "did yo receive any call from FBI agent Roy Vanbrunt"?
> WOLFF: I have receive calls from people regarding this case in the
>         last week or so, yes.

```
SCOTTON: and the FBI called you too?
WOLFF: I do believe the FBI call me.
SCOTTON: ..."calls that you have received the last couple of days
         of prosecutor or FBI?
WOLFF: "Roy Vanbrunt". I receive a call by the FBI agent name Roy.
SCOTTON: and did you talk about the report?
WOLFF: yes I did.
```

(See, DE-480:84-85-86-87-88). The agent lied and denied ever talking to Mr Wolff. (See DE-478:56).

Mr. Wolff would testify and provide crucial evidence that Mr. Osvaine Duarte, the third party shipping company that handled the Movant shipments, had used Mr. Wolff business FedEx account without authorization. Mr. Wolff further would presented the police reports he made with NY-PD and Sand Springs PD regarding Duarte using his FedEx account.

Given this clear and dramatic evidence of prosecutorial misconduct, the Movant asserts that his constitutional rights to a compulsory fair trial were violated.

Supreme Court has established that the government violates due process when its conduct "effectively dr[ives a] witness of the stand". WEEB v. TEXAS, 409 U.S. 95, 98 (1972)(per curiam)(holding right to present a defense was violated when trial Judge single out and admonishes a defense witness about  the risks of prejury in "unnecessarily strong term"). In fact, under WEBB, "[i]t is well established that substantial government interference with a defense witness's free and unhampered choice to testify amount to a violation of due process". AYALA v. CHAPPELL, 829 F.3d (1081, 1098 (9th cir. 2016)(quoting EARP v. ORNOKIS, 431 F.3d 1158, 1170 (9th cir. 2005)). Although WEEB  dealt only with judicial misconduct, wrongful conduct by prosecutor or law enforcement officers can also constitute substantial government interference with a defense witness's choice to testify. See, e.g. UNITED STATES v. VAVAGES, 151 F.3d 1185, 1189 (9th cir. 1998)("[t]he conduct of prosecutors, like the conduct of Judges, is unquestionably governed by WEBB"); UNITED STATES v. LITTLE, 757 F.2d 1420, 1439-40(9th cir. 1954)(analyzing claim of defense witness intimidation by IRS agent); See also, AYALA, 824 F.3d at 1111(explaining that allegation of witness intimidation by detective,

taken as true, would amount to constitution violation).

The Supreme Court has also made clear that "the sixth amendment right does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witness", but only witnesses in his favor. UNITED STATES v. VALENZUELA-BERNAL, 458 U.S. 858, 867 (1982)(emphasis in original).

Had Junio Silva been allowed    testify without intimidation, he would have provided material testimony as to Osvaine Duarte shipping business for him as well as the Movant. Junio Silva would also testify and affirm that the Movant's marriage was not false as Junio Silva himself spend time with the Movant's family before.

Those witnesses along with the 29 denied by the trial Judge Court would have allowed the jury to have a substantial defense theory. CACOPERCADO v. DEMOSTHENES, 37 F.3d 504, 509 (9th cir. 1994)(holding sixth amendment witness interference claim fails without showing of relevance and materality). Those crucial witnesses above testimony would have been favorable and material. Thus, the agent unconstitutional behavior caused those witnesses not to testify. AYALA, 829 F.3d at 1111; BOHN, 622 F.3d at 1138 (quoting WILLIAM v. WOODFORD, 394 F.3d 567, 601(9th cir. 2004). Had those witnesses been allowed to testify, they would provided clear evidence that would tends to "cast doubt" on the government's case, qualifies as material. UNITED STATES v. LEAL-DEL CARMEN, 697 F.3d 964, 972 (9th cir. 2012); See also, GOVT OF VIRGIN ISLAND v. MILLS, 956 F.2d 443, 446 (3rd cir. 1992).

The attorney appeal failed to include in his appeal brief this serious violation. Thus, he has provided ineffective assistance during the direct appeal. Consequently, the Movant's constitutional rights were violated.

Finally, the Movant point out the numerous unlawful denial of due process made by Judge Federico A. Moreno during almost five years. His bias has seriously prejudice the Movant who has endure unlawful incarceration time. Thus, makes those claims in this § 2255 more serious because the Movant has been denied due process rights clause of the U.S. constitution.

The Movant contends that since Judge Moreno was appointed to this case on June, 2014, the record shows numerous motion denied without due process. It is reasonable to say that had the Court lawfully and properly review the Movant numerous motion, there is a possibility that he would have different outcome in this case as well as been release from prison. Thus, for almost five years, the Movant was denied due process rights and consequently have endure unlawful incarceration time.

There absolute nothing that could fix all the inappropriate behavior of the Judge. Thus the violation is clearly established which demand the conviction vacated and this case dismiss with prejudice.

## VII. CONCLUSION

The Movant has endeavored to bring justice to his case and prove that this case should have been dismissed seven years ago since the indictment failed to state a offense and the amount of prosecutorial misconduct in this single defendant case.

Nonetheless, after seven years, the Movant bring to the Court's attention multiple judicial errors of law, misrepresentation of evidence, contradictory and perjured testimony, prejured testimony, due process violations, bias, abuse of discretion which when combined cause extreme prejudice to the Movant.

The result lead to a guilty verdict for a wrongful alleged crime he did not committed. The public reputation toward the U.S. system is forever affected.

Therefore, the Movant moves the Court of Southern District of Florida in the interest of justice to grant an emergency evidentiary hearing without any delay and without allowing anyone to put their thumb on the scale of justice. On the evidentiary hearing and upon proving his claims, this Court should dismiss the case with prejudice and restor all the Movant's rights and mostly important his freedom which was unlawfully taken seven years ago.

The Movants urges this Court to grant an emergency evidentiary hearing because the Movant has already served substantial time incarcerated under serious constitutional violations. Thus, the Movant sentence is now short, and if takes the normal time for the Court to rule in this § 2255, takinf into account those errors, bias, violation of due process rights set forth in this case, this appeal would be nugatory and worthless.

Respectfully Submitted,

ROGERIO CHAVES SCOTTON
REG NO: 99370-004
D. RAY JAMES C.F.
P.O. BOX 2000
FOLKSTON GA 31537

**PROOF OF SERVICE**

I Rogerio Chaves Scotton, do certify that on this May 16, 2019, I have served the attached suplement memorandum (which is under the Movant's constitutional rights) on the Southern District of Florida in the above proceeding. I have served this supplement memorandum via, United States Postal Service (USPS) certified mail through, D. Ray James C.F. legal mail.

ROGERIO CHAVES SCOTTON
REG NO: 99370-004
D. RAY JAMES C.F.
P.O. BOX 2000
FOKSTON GA 31537

Violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.

# PRIORITY ★ MAIL ★

## UNITED STATES POSTAL SERVICE ®
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

**FROM:**

NAME: ROBERTO SLOTON
DOP# FF-220 DOV
D.Ray James Correctional Facility
P.O Box 2000
Folkston, GA 31537

MAY 15 2019

**TO:** U.S. DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CLERK OFFICE ROOM 8N09
400 NORTH MIAMI AVENUE
MIAMI, FL 33128

LEGAL MAIL !!!

Label 228, March 2016        FOR DOMESTIC AND INTERNATIONAL USE

---

# PRIORITY ★ MAIL ★

**FROM:**

## UNITED STATES POSTAL SERVICE ®

### USPS TRACKING #

9114 9023 0722 4165 6319 29

USPS
L1B90440 Jan. 2013
7690H6-000-7948

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
400 NORTH MIAMI AVENUE
MIAMI FL 33128

---

# PRIORITY ★ MAIL ★

- DATE OF DELIVERY SPECIFIED*
- USPS TRACKING™ INC
- INSURANCE INCLUDE
- PICKUP AVAILABLE
  * Domestic only

## UNITED STATES POSTAL SERVICE ®

PRESS FIRMLY

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

U.S. DIS TRICT COURT
SOUTHERN DISTRICT OF FLORIDA
400 NORTH MIAMI AVENUE
MIAMI FL 33128

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

EP14F July 2013
OD: 12.5 x 9.5

P S00001000014





TRACKED

INSURED

UNITED STATES
POSTAL SERVICE

MAY 1 4 2019

D. Ray James Prison
Hwy 252 - P.O. Box 2000 - Folkston, GA 31537
"The enclosed letter was processed through special
mailing procedures for forwarding to you.  The
letter has been neither opened nor inspected.  If
the writer raises a question or problem over which
this facility/center has jurisdiction, you may wish
to return the material for further information or
clarification.  If the writer encloses correspondence
for forwarding to another addressee, please return
enclosure to the above address."

Legal mail!!!



EP14F July 2013
OD: 12.5 x 9.5

PRIORITY
★ MAIL ★

AT RATE ENVELOPE
RATE ★ ANY WEIGHT"

S00001000014