UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-62428-CV-WILLIAMS
(12-60049-CR-WILLIAMS)
MAGISTRATE JUDGE REID

ROGERIO CHAVES SCOTTON,

     Movant,

vs.

UNITED STATES OF AMERICA,

     Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

### I.    Introduction

Movant, Rogerio Chaves Scotton, has filed a *pro se* Motion to Vacate pursuant to 28 U.S.C. § 2255 [CV ECF No. 1], challenging his conviction and sentence entered after he was found guilty by a jury of twenty-seven counts of mail fraud and two counts of false statements in Case No. 12-60049-CR-WILLIAMS. For the reasons explained in this Report, Movant is not entitled to relief in this § 2255 proceeding.

This cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B), (C) and Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts. [CV ECF No. 24].

### II.  Claims

Construing the Motion liberally as afforded *pro se* litigants pursuant to *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972), Movant raises the following grounds for relief:

1. He was denied effective assistance of counsel where none of his attorneys conducted any preparation for trial.

2.  Appellate counsel was ineffective and operating under a conflict of interest where counsel failed to file a motion for release pending appeal and failed to (1) file a motion for release pending appeal; (2) review the case file and evidence provided by Movant regarding the accuracy of the spreadsheets; (3) to raise all *Brady* violations; (4) raise due process violations; (5) request sentence correction pursuant to Amendment 791; (6) raise *Giglio* violations; (7) challenge the obstruction of justice and sophisticated means sentencing enhancements; and (8) argue that the indictment wrongfully charged mail fraud.

[CV ECF No. 1].

### III.    Procedural Background

Movant was charged with twenty-seven counts of mail fraud (Counts 1 -27) and two counts of making materially false, fraudulent and fictitious statements to the United States Citizenship and Immigration Services (Counts 28 and 29). [CR ECF No. 94]. The Court found Movant to be a serious risk of flight and ordered him detained. [CR ECF No. 16].

Prior to trial, Movant dismissed five different attorneys. After these multiple representations, the Court determined that Movant would represent himself at trial. An attorney was appointed to act as standby counsel during trial. [CR ECF No. 148].

In an order denying Movant's motion to dismiss, the Court provided a history of Movant's interactions with his attorneys. [*Id*.]. Movant was represented by John Howe who filed a Notice of Temporary Appearance at Movant's initial appearance on March 16, 2012. [*Id*. at 2]. At a status conference on March 22, 2012, Jonathan S. Friedman filed a Notice of Temporary Appearance. [*Id*.]. On March 29, 2012, the Court ordered that Movant be detained. [*Id*.]. Friedman filed a permanent Notice of Appearance on April 5, 2012 at Movant's arraignment. [*Id*.]. After Movant filed objections to the Magistrate Judge's order of detention, the District Judge conducted a hearing after which the Court declined to grant bond. [*Id*. at 3].

On May 23, 2012, counsel filed a motion to continue trial because discovery was "somewhat voluminous" and additional time was required to prepare. [*Id*.]. The motion was granted. [*Id*.]. On June 4, 2012, Movant fired Friedman and replaced him with Robert Abreau. [*Id*.]. On July 27, 2012, Abreau moved to withdraw as counsel because Movant was not paying the costs of defending him. [*Id*.]. The motion was granted, and the Court appointed the Federal Public Defender to represent Movant. [*Id*.]. On August 14, 2012, Assistant Federal Public Defender Chantel Doakes filed a notice of appearance. [*Id*.]. Doakes promptly filed a motion to continue trial so that she would have sufficient time to review the discovery and prepare for trial. [*Id*.]. After a hearing, the Court granted another continuance of trial. [*Id*.]. The trial date was reset to January 28, 2013.

On November 7, 2012, Movant filed a letter with the court requesting that the Federal Public Defender be replaced because he disagreed with Doake's advice and strategy. [*Id*. at 3-4]. After a sealed hearing, the Court granted Movant's request but warned him that he had "an obligation to cooperate with counsel and to assist in his defense and that if he failed to do so, he could find himself representing himself." [*Id*. at 4]. The Court then appointed Attorney Armstrong to represent Movant. [*Id*.].

On December 31, 2012, Armstrong moved to withdraw. [*Id*.]. Armstrong alleged that he met with Movant on three occasions and in each of the meetings Movant "became hostile, verbally abusive, and began shouting" at counsel. [*Id*.]. Two of the meetings ended with Movant walking out. [*Id*.]. The Court conducted a hearing on the motion during which the Court again warned Movant of his need to cooperate with counsel and advising him that his behavior could warrant the court declining to appoint new counsel. [*Id*.]. Nevertheless, the Court appointed new counsel,

Stuart Adelstein, to represent Movant. [*Id.*]. The Court advised Movant that this was his last chance for appointed counsel and that he was required to cooperate and assist in his defense. [*Id.*].

A status conference was held on January 10, 2013 to determine when Adelstein would be ready for trial. [*Id.*]. Due to the volume of discovery, and prior work commitments, Adelstein could not be ready for trial until August 2013. [*Id.*]. Defendant agreed to the continuance and the trial was set on the August 26, 2013 trial calendar. [*Id.*].

On June 26, 2013, Adelstein filed a motion to withdraw stating that in a recent meeting, Movant had become agitated and threatening. [*Id.* at 4-5]. Although Movant apologized, he later became verbally abusive, forcing Adelstein and his investigator to terminate the meeting. [*Id.* at 5]. After a hearing on the motion, the Court declined to grant it. [*Id.*].

On Adelstein filed a second motion to withdraw, asserting that Movant had once again become belligerent and said: "I don't want you as my lawyer. I'm going to sue you and if the lawsuit does not resolve this issue, I have other ways." [*Id.*]. After a hearing, the Court found Movant competent and confirmed that he had filed a meritless suit against Adelstein. [*Id.*]. Based on Movant's repeated refusal to cooperate, the Court found that there was no good cause to appoint substitute counsel, noting that Adelstein was Movant's sixth counsel. The Court conducted a *Faretta* hearing and appointed Adelstein as standby counsel. [*Id.* at 5-6]. The Court later removed Adelstein as standby counsel and appointed Doakes to serve as standby counsel. [*Id.* at 6]. Just two weeks later, on August 13, 2013, Doakes filed a motion to withdraw as standby counsel after Movant threatened to sue the Federal Public Defender's Office unless she reported her "prior 'corrupt mishandling' of the case" and paid him $10,000,000. [*Id.*]. The Court granted the motion, leaving Movant without counsel.

On August 21, 2013, the Court held a calendar call. [*Id*.]. Movant complained that he had not been given any discovery. [*Id*.]. Doakes advised the court that she had provided Movant with all discovery and that she and her investigator had attempted to review the discovery with Movant. [*Id*.]. The investigator testified under oath that he had gone to the jail to review discovery, but he refused to look at some of the materials. [*Id*.]. He testified that the discovery had been provided to Movant prior to November 2012. [*Id*.]. Adelstein also advised the Court that he went to review the material with Movant, but Movant informed him that he had already reviewed the material and did not wish to review them again. [*Id*.]. Adelstein left the material with Movant. [*Id*.].

The Court found Movant was not credible and concluded that he had been provided with discovery. [*Id*.]. In an abundance of caution, the Court directed Doakes and Adelstein to bring all materials they had to court on August 21, 2013. On that date, in the Court's presence, the materials were turned over again to Movant. [*Id*.]. The Court granted Movant's request for an additional week to review the material. [*Id*.].

On August 26, 2013, Movant filed a Motion to Dismiss Indictment on a Violation of Attorney Client Privacy and Confidentiality or Alternatively for an Evidentiary Hearing." [CR ECF No. 146]. The Court characterized the motion as "essentially a rambling diatribe on Adelstein and his alleged failures to provide [Movant] with discovery, among other shortcomings." [CR ECF No. 148 at 7]. In the order denying the motion to dismiss, the Court noted that Movant's problems with Doakes and Adelstein had been addressed and no fault had been found with the representation of either attorney. [*Id*. at 7]. The recounted the efforts made to provide Movant with representation and the further efforts made to ensure that Movant received discovery. [*Id*.]. The Court found that Movant had not been prevented from reviewing discovery and preparing for trial. [*Id*. at 8]. The motion to dismiss was found to be frivolous and denied. [*Id*.].

After a jury trial that lasted sixteen days, Movant was found guilty as charged. [CR ECF No. 386]. His standby counsel was appointed to represent him through sentencing. [CR ECF No. 403]. Movant was sentenced to 108 months imprisonment for Counts 1-27 and a concurrent sixty months on Counts 28 and 29. [CR ECF No. 412]. His conviction and sentence were affirmed on April 12, 2016. *See United States v. Scotton*, 647 F. App'x 947 (11th Cir. 2016).

While the appeal was pending, Movant filed motions in the District Court. He filed a motion to dismiss the indictment and vacate his conviction [CR ECF No. 519], which was dismissed without prejudice for lack of jurisdiction after being referred to Magistrate Judge Patrick White. [Case no. 14-62265-CV-Moreno, ECF Nos. 5, 6]. Movant's appeal was dismissed for lack of prosecution. [*Id.*, ECF No. 13]. The motion [CR ECF No. 519] which was characterized as a § 2255 motion was also denied by a separate order in the criminal case. [CR ECF No. 531].

After his appeal had concluded, Movant filed what he entitled "Motion to Vacate and Set Aside Conviction to Request a New Trial Pursuant to Fed. R. Crim. P. 33(b)(1) and for Relief from Judgment Pursuant to Fed. R. Civ. P. 60(d)(3)." [CR ECF No. 647.]. The Court denied the motion, noting that it had repeatedly ruled on Movant's post-conviction motions. [CR ECF No. 650; 17-60111-CV-Moreno, ECF No. 6]. Movant filed a motion to correct, arguing that he had never received warnings before his prior motions were recharacterized as § 2255 motions. [17-60111-CV-Moreno, ECF No. 29]. The Court summarily denied the motion and Movant appealed. [*Id.*, 30]. The Eleventh Circuit dismissed his appeal for failure to pay the filing fees. [*Id.* 40].

On December 11, 2017, Movant his first Motion to Vacate in which he explicitly referred to 28 U.S.C. § 2255. [CV-ECF No. 1]. On that same date, Movant also filed a Motion to Amend. [CV ECF No. 3]. The previously assigned Magistrate Judge entered a Report that recommended that this Motion be dismissed as premature and successive. [CV ECF No. 4]. The District Court

adopted the Report and dismissed the Motion. [CV ECF No. 7]. On appeal, the Government

conceded that the Court had erred when it recharacterized the prior motions. [CV ECF No. 23].

The Eleventh Circuit vacated the order denying relief and remanded the case. [*Id.*].

The case was reopened and referred to the Undersigned on April 30, 2019.[1] [CV ECF No.

24]. Movant filed a Supplemental Memorandum in support of his Motion to Vacate on May 17,

2019. [CV ECF No. 27]. On February 27, 2020, Movant was released from imprisonment by the

Federal Bureau of Prison [CV ECF No. 77], and on April 21, 2020 Movant was removed from the

United States.[2] [3]

### IV. Standard of Review

A. **Section 2255**

Because collateral review is not a substitute for direct appeal, the grounds for collateral

attack on a final judgment, pursuant to 28 U.S.C. § 2255, are extremely limited. A prisoner is

entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or

laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by

law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *see also McKay v.*

*United States,* 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). Thus, relief under § 2255 is reserved for

---

1 Movant filed a motion to vacate that was docketed in case number 19-60745-CV-Williams on March 20, 2019. [19-60745-CV-Williams, ECF No. 1]. That case was closed and Movant was instructed that he could file an amended motion in this case subject to any procedural or time bars. [*Id.* at ECF Nos. 9, 13, 17].

2 Because Movant was in federal custody when he filed the Motion to Vacate, he satisfies the requirements of 28 U.S.C. § 2255(a) to bring this case. *See Carafas v. LaVallee,* 391 U.S. 234, 238 (1968) ("The federal habeas corpus statute requires that the applicant must be 'in custody' when the application for habeas corpus is filed.").

3 This case is not moot because Movant is serving a three-year term of supervised release and he is primarily challenging his conviction, not his sentence. Supervised release is a collateral consequence of his conviction that provides a case or controversy that is redressable, thus satisfying U.S. Const., Art. III, § 2. *See Spencer v. Kenma*, 523 U.S. 1, 7-9 (1998); *see also United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) ("When the defendant challenges his underlying conviction, this Court's cases have long presumed the existence of collateral consequences.") (citations omitted). To the extent that he is challenging his sentence which, with the exception of his supervised release term, he has already completed, those challenges are moot.

transgressions of constitutional rights, and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *See Lynn v. United States,* 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 165 (1982).

If a court finds a claim under § 2255 valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner, grant a new trial, or correct the sentence." 28 U.S.C. § 2255. The burden of proof is on the movant to establish that vacatur of the conviction or sentence is required. *See Beeman v. United States,* 871 F.3d 1215, 1221-1222 (11th Cir. 2017).

**B. Ineffective Assistance of Counsel Principles**

Regarding claims challenging counsel's effectiveness, the law is well settled that a criminal defendant is entitled to the effective assistance of competent counsel before deciding whether to plead guilty. *See Lee v. United States,* 582 U.S. ___, 137 S. Ct. 1958, 1964 (2017). Where a movant challenges counsel's effectiveness, he must demonstrate that: (1) counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 694 (1984). However, if the movant cannot meet one of *Strickland's* prongs, the court does not need to address the other prong. *See id.* at 697; *see also Brown v. United States,* 720 F.3d 1316 (11th Cir. 2013).

To show deficient performance, a movant must demonstrate that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted). With regard to the prejudice requirement, the movant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland,* 466 U.S. at 694. In the sentencing context, this requires a

showing that the sentence would have been less severe. *See Glover v. United States,* 531 U.S. 198, 203 (2001).

A movant is also not prejudiced by counsel's failure to raise non-meritorious claims. *See Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014). Courts may not vacate a conviction or sentence solely because the outcome would have been different, but for counsel's error, as it may grant the defendant a windfall to which the law does not entitle him. *See Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993); *see also Allen v. Sec'y, Fla. Dep't of Corr.,* 611 F.3d 740, 754 (11th Cir. 2010).

Bare and conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm's, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333-34 (11th Cir. 2012); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Thus, a § 2255 movant must provide factual support for his contentions regarding counsel's performance. *See Smith v. White,* 815 F.2d 1401, 1406 (11th Cir.1987).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail ... are few and far between." *Chandler v. United States,* 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*). The *Strickland* test does not require a showing of what the best or good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *See Dingle v. Sec'y for Dep't of Corr.,* 480 F.3d 1092, 1099 (11th Cir. 2007). In retrospect, where counsel's decision appears to have been unwise, it will have been ineffective only if it was "so patently unreasonable that no competent attorney would have chosen it." *Id.* (citations omitted).

## IV. <u>Discussion</u>[4]

Movant has presented several claims of ineffective assistance of trial counsel and appellate counsel. None of the claims merit relief.

### A. Pretrial Performance of Attorneys

Movant contends that he was denied effective assistance of counsel during pretrial preparations. He raises a number of claims against the several attorneys who represented him prior to trial. It is noted that each of these attorneys was discharged by Movant prior to trial and that Movant was *pro se* starting on July 25, 2013 until April 7, 2014 when he was appointed counsel for sentencing.

Movant's claims that his various attorneys were ineffective in pretrial preparation and failed to provide discovery are refuted by the record. As recounted above, Movant was at various points represented by six different attorneys. All the attorneys ultimately moved to withdraw or were fired by Movant. Two of the attorneys, Doakes and Adelstein, were present at a status conference where they advised the Court that they had attempted to review discovery with Movant and been rebuffed. Both these attorneys also advised the Court that they had provided the discovery to Movant. In light of the Court's findings that Doakes and Adelstein were credible and Movant was not, any claim that counsel was ineffective for failing to review the evidence is without merit and should be denied.

Movant also contends that Adelstein refused to seek his release on bond. Movant, while represented by Adelstein, filed *pro se* motions for reasonable bond. [CR ECF Nos. 75, 77]. At a hearing Adelstein explained that he did not adopt the motions because the issue of bond had

---

4 The Government has not contested the timeliness of the instant Motion.

previously been considered by the Court on at least two occasions and Movant could not satisfy the conditions for bond. [ECF No. 462 at 4-5]. The Court advised Movant that the issue could be revisited if he were able to meet the conditions for bond. [*Id*. at 8]. The Court then struck the motions because Adelstein had not adopted the *pro se* motions. [CR ECF No. 91]. After Movant became *pro se*, he again filed motions seeking a bond. [CR ECF Nos. 156, 157]. The Court denied the motions for bond because Movant had presented no new evidence as to why he should be granted bond. [ECF No. 195].

Movant cannot establish that Adelstein was ineffective for failing to file a motion for bond. The record shows that the court considered Movant's request for bond and determined he could not meet the conditions set by the Court. Since there was no basis for seeking bond, Adelstein could not have been ineffective for failing to pursue this issue.

### B. Sentencing

Movant next contends that appointed counsel, Jason Kreiss, was ineffective in failing to adequately prepare for sentencing by reviewing all discovery. Movant contends that Kreiss failed to review the discovery because he believed he would not be compensated for doing so. He argues that if Kreiss had reviewed the discovery, he would have found that the spreadsheets used by the government were inaccurate. Movant claims he would have received a lesser sentence if the accuracy of the spreadsheets had been raised at sentencing.

This claim is refuted by the record. On April 3, 2014, two months after the conclusion of trial, Movant filed a motion requesting that standby counsel be appointed to represent him at sentencing. [CR ECF No. 401]. On April 7, 2016, the Court granted the motion, noting that standby counsel had the opportunity to observe the trial and would not need to review all discovery or

prepare for trial, negating the cost basis for previously declining to appoint a fourth attorney. [CR ECF No. 403]. Sentencing was scheduled for May 9, 2014. [CR ECF No. 387].

The draft of the Presentence Investigation ("PSI") was filed on April 4, 2014. [CR ECF No. 402]. Kreiss filed objections to the PSI on May 1, 2014 and May 5, 2014. [CR ECF Nos. 408, 409]. Movant objected to, among other things, the Court solely relying upon the spreadsheets used during trial and other potential hearsay evidence that does not have sufficient indicia of reliability. [CR ECF No. 408 at 3]. Counsel argued that the amount of loss was easily quantifiable by examining the waybills and invoices for packages that were actually shipped. [*Id.*]. Counsel also filed a motion to continue sentencing. [CR ECF No. 410]. Counsel sought a continuance because Movant requested that he serve a subpoena *duces tecum* upon a number of the victim corporations in order to litigate the amount of loss. [*Id.* at 1]. The Court denied the motion. [CR ECF No. 411].

At sentencing, the Court considered Movant's objections to the loss calculation. [CR ECF No. 450 at 14]. Movant objected to the collective loss calculation of $2,582,935.60. [*Id.* at 14]. The Court noted that the loss figure did not have to be determined with absolute certainty but recognized there needed to be a basis to reach a conclusion as to the amount. [*Id.*]. The Court explained that a request to continue the sentencing to allow Movant to calculate the figures himself had been denied because Movant had plenty of opportunity to do that or obtain any records he needed over the prior two years. [*Id.* at 15].

Counsel explained that he had not reviewed the discovery because he was instructed by the Court that he would not be compensated to review discovery. [*Id.* at 15-16]. The Court corrected counsel, noting that he had been told he would not be compensated for preparing for trial. [*Id.* at 16]. The Court made clear that it had not instructed counsel not to prepare for sentencing. [*Id.*]. Before proceeding any further the Court addressed any misconceptions. [*Id.*]. Counsel made clear

- 12 -

that he had prepared for sentencing and made two or three trips to see Movant in preparation. [*Id*.].

Counsel explained that Movant wanted to subpoena each of the victim companies to compile date

to contest the Government's loss figure. [*Id*. at 16-17].

The prosecution established the amount of loss through the testimony of FBI Agent Roy

Van Brunt using spreadsheets that presented a summary of the evidence that had been presented

at trial. [*Id*. at 18-45]. Movant's counsel cross-examined Van Brunt asking if the amounts of loss

were calculated by the victims and how they were calculated. [*Id*. at 46]. Van Brunt acknowledged

he had not reviewed every waybill or invoice that constituted the losses. [*Id*. at 47-48]. On redirect,

Van Brunt testified the source of the data for the loss amounts was the business records of the

shippers. [*Id*. at 53]. At the conclusion of Van Brunt's testimony, the prosecution stated it would

rely on both the evidence presented at trial and the evidence presented at the sentencing hearing.

[*Id*.].

Movant's counsel presented several arguments in opposition to the calculation of the loss

amount. He argued that without the specific invoices any mathematical errors would be unknown.

[*Id*. at 55-56]. He further argued that the spreadsheets relied on to establish the loss amount were

hearsay and lacked reliability because the amount should have been calculated using the actual

waybills and invoices. [*Id*. at 56]. In response to a question from the Court, the prosecution

explained that it had provided all of the documents regarding billing to the defense. [*Id*.].

Despite Movant's counsel's objections, the Court found that the spreadsheets were the

evidence that had been presented at trial to support the charges and were sufficient to determine a

reasonable estimate of the loss. [*Id*. at 57].

Based on the record at sentencing, counsel provided effective representation. Movant's

contention that counsel did not review all discovery because he would not be compensated is not

an accurate reflection of what occurred. As outlined above, counsel was advised that he should not prepare as if for trial but was to prepare for sentencing.

Furthermore, Movant had access to all of the discovery in the two years preceding trial and any failure to adequately review the discovery is not attributable to counsel. As was noted by the Court, the Government met its burden of establishing a reasonable estimate of the amount of loss based on the evidence that had been presented at trial. Any failure to challenge that evidence was the fault of Movant who had represented himself at trial. Since the record refutes this claim, it should be denied.

### C.  Denial of Right to Counsel

Movant next contends that the trial court denied him his right to counsel by refusing to appoint counsel and forcing him to proceed to trial. This claim could have been raised on direct appeal and is therefore procedurally barred unless Movant can establish cause and prejudice for failing to raise it on direct appeal. *See McKay*, 657 F.3d at 1196; *see also Bousley v. United States*, 523 U.S. 614, 622 (1998). Movant has presented no cause for failing to present this claim on direct appeal, as such this claim is procedurally barred.

Even if this claim were not barred it would be denied because it is refuted by the record. As noted above, Movant was by any account a difficult client. He went through numerous attorneys and was given three options when he sought a last-minute continuance. He could retain a new attorney, proceed *pro se*, or proceed with Adelstein. The Court found that there was no good case to appoint new counsel and Movant proceeded *pro se* with standby counsel. The Court simply did not force Movant to represent himself. The record refutes this claim.

### D.  Appellate Counsel's Performance

Movant next presents a myriad of claims that appellate counsel was ineffective. He claims appellate counsel was ineffective for failing to (1) file a motion for release pending appeal; (2) failing to review the case file and evidence provided by Movant regarding the accuracy of the spreadsheets; (3) failing to raise all *Brady* violations; (4) failing to raise due process violations; (5) failing to request sentence correction pursuant to Amendment 791; (6) failing to raise *Giglio* violations; (7) failing to challenge the obstruction of justice and sophisticated means sentencing enhancements; and (8) failing to argue that the indictment wrongfully charge mail fraud. [CV ECF No. 1 at 20-21].

**1.   Motion for Release Pending Appeal**

Movant first contends that counsel should have filed a motion for bail pending appeal. He argues that he was prejudiced because if he had been released on bail, he would have gained exculpatory evidence, reviewed documents, and added his input to the appeal brief. Movant does not contend that he would have prevailed on this motion and has not presented any arguments that could have been raised in such a motion. In short, this claim is insufficient to warrant relief.

**2.   Failure to Review Evidence, Case Files and Discovery CDs**

Movant contends that appellate counsel failed to review the record of the trial and the discovery. He alleges that counsel relied upon the transcripts of the trial but did not obtain the "verbal audio recording of the trial." [CV ECF 1 at 29]. This claim is a collection of conclusory contentions that counsel should have done a better job of reviewing the trial record and appears to be an attempt to provide a basis for Movant's other claims of appellate counsel's alleged deficient performance. Standing alone, this claim provides no basis for relief.

### 3.  Failure to Raise *Brady*[5] Issues on Appeal

Movant contends that counsel was ineffective for failing to present five alleged *Brady* violations on appeal. [*Id*. at 32-36]. He contends that several pieces of exculpatory or impeaching evidence were improperly withheld by the Government. [*Id*.]. The evidence allegedly withheld includes (1) a letter of a final decision denying his I-485 application for lawful permanent residence status; (2) his entire A-File; (3) confession letter and video of Osvaine Duarte; (4) blank discovery CDs; and (5) documents regarding a B & H Photo FedEx account. [*Id*.].

A *Brady* claim "involves the discovery, after trial of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (emphasis added). In *Brady*, the Supreme Court established three criteria a criminal defendant must prove in order to establish a violation of due process resulting from the prosecution's withholding of evidence. Specifically, the defendant alleging a *Brady* violation must demonstrate (1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or exculpatory, and (3) that the evidence suppressed was material. *See United States v. Severdija*, 790 F.2d 1556, 1558 (11th Cir. 1986). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *See United States v. Alzate*, 47 F.3d 1103, 1109-1110 (11th Cir. 1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)); *see also United States v. Stewart*, 820 F.2d 370, 374 (11th Cir. 1987) (same).

### a.  I-485 Application Decision

---

5 *Brady v. Maryland*, 373 U.S. 83 (1963) (holding that the prosecution's suppression of potentially exculpatory evidence is a violation of the Due Process Clause of the Fourteenth Amendment).

Movant contends that he was denied a copy of letter denying his I-485 application for permanent residence. He argues that appellate counsel should have argued that the Government committed a *Brady* violation by withholding this letter. The issue of the letter arose pre-trial at a detention hearing. [CR ECF No. 178]. The Court found that Movant's claim that the Government had engaged in improper conduct with regard to the draft letter regarding the I-485 application was "unsupported, wild speculation." [CR ECF No.274 at 2]. Furthermore, the letter was presented only at Movant's detention hearing and had no bearing on his conviction and sentence. The I-485 was not withheld from Movant and was irrelevant to the conviction and sentence. The claim that counsel was ineffective for failing to raise this clam should be denied because counsel cannot be ineffective for failing to raise a meritless claim. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *see also United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999).

### b. A-File

Movant next claims that appellate counsel failed to review his A-File for exculpatory evidence or argue on appeal that the government's withholding of the A-File constituted a *Brady* violation. He does not identify any exculpatory evidence contained in the A-File to support this claim. Movant's A-File was provided to him by the Government prior to trial. [CR ECF No. 361 at 24-25]. In an order addressing this issue, the Court found that the allegations that the government had withheld immigration documents was "unsubstantiated" and "frivolous." [CR ECF 197 at 2]. Appellate counsel was not ineffective for failing to raise this meritless issue.

### c. Duarte Confession Video and Letter

Movant contends that the government suppressed a video and letter from Osvaine Duarte which showed that Movant was not a client of Duarte. He argues that counsel should have included a claim relating to the letter and video as a *Brady* claim on appeal. The issue of the letter and video

arose during a hearing before a Magistrate Judge prior to trial. [CR ECF No. 361 at 14-24]. In that hearing, Movant claimed he had a letter from Duarte that the Government took from him. He also claimed that Judge Rosenbaum had a copy of the letter. The Government denied it had the letter or video and made a demand that Movant produce those items. [*Id*. at 17-20]. The Court found that there was no evidence that the Government had any material confession or letter from Duarte and called Movant's allegations "unsubstantiated" and "wholly frivolous." [CR ECF 197]. Counsel was not ineffective for failing to raise this meritless issue on appeal.

      d.  **Blank CDs**

Movant contends that during trial he was provided with blank CDs which were supposed to contain the spreadsheets used by the Government at trial. He alleges that he was not afforded the opportunity to review the spreadsheets for accuracy. He argues that appellate counsel should have raised the issue of the blank CDs as a *Brady* issue on appeal. The issue of a blank CD came up during trial. [CR ECF No. 511 at 126]. At the time the issue was raised it was clear that the blank CD had not been provided by the Government. It was also established that the Government had provided Movant with a Bates Stamped CD in a timely fashion. The Court also found that Movant had been provided with all CDs that were used by the Government at trial. In light of this record, counsel was not ineffective for failing to raise this meritless claim on appeal.

      e.  **B&H Video Information**

As his final *Brady* claim, Movant contends that counsel should have argued that the Government failed to provide relevant documents regarding a B&H account or that he used the account without authorization. Contrary to Movant's contentions, the information regarding the B&H account was addressed during trial. A FedEx representative testified that B&H was an old account that had been opened in 2001, prior to the commission of the mail fraud offenses. The

representative testified that the account was used for actual B&H shipments and later was used by Movant fraudulently. Thus, the information regarding the legitimate nature of the B&H account had been presented at trial and there was no basis to raise this issue as a *Brady* claim. Counsel was not ineffective for failing to raise this meritless issue. *See Chandler*, 240 F.3d at 917; *see also Sanders*, 165 F.3d at 253.

### 4. **Failure to Appeal Right to Call Witnesses**

Movant next contends that appellate counsel was ineffective for failing to argue that his constitutional rights were violated because he was precluded from calling witnesses. He alleges that the trial court initially granted his request to call twenty-nine witnesses, but later denied his request to call those witnesses. He argues that his constitutional rights were violated, because if these witnesses had been called the outcome of the trial would have been different.

The record establishes that the trial court allowed Movant to call any witness who he could credibly show would provide relevant evidence. The Court conducted a hearing to review Movant's witness list. [CR ECF No. 165]. The Court reviewed each witness's proffered testimony and allowed those whose testimony would be relevant and precluded those who would not. [*Id*. at 20-54]. As the hearing continued the next day, the Court advised Movant that he could have any witness he wanted if they were relevant and admissible. [CR ECF No. 166 at 9]. The Court authorized standby counsel to serve Movant's subpoenas. [*Id*. at 13-14].

Movant later requested a private investigator to find additional documents, witnesses, a phone voice expert and a computer expert. Movant listed 33 witnesses, but the Court noted that he had not established the necessity of their testimony. Movant stated that he had about 120 witnesses he wanted to subpoena. The Court directed that his requests would be considered *ex parte*. In its order regarding these requests, the Court found that in the *ex parte* hearing Movant had "refused

to participate in the hearing and refused to seek approval for his remaining subpoena requests." [CR ECF 262 at 2]. Movant was warned that "his conduct may preclude him from having trial witness subpoenas issued." [*Id*.]. In light of Movant's "unwillingness to participate in the proceedings, the Court terminated the hearing and denied [Movant]'s remaining subpoena requests." [*Id*.]. In its order, the Court noted the Movant's "continuing frivolous and obstructive behavior in this case." [*Id*.]. Although the request for additional subpoenas was denied, the Court granted Movant's request that the Marshal's Service serve the approved subpoenas. [*Id*.].

This record reflects that any failure of Movant to call witnesses was due to his unwillingness to participate in a hearing to address his subpoena requests and his frivolous and obstructive behavior. Appellate counsel was not ineffective for failing to pursue this meritless issue on appeal.

### 5. Sentence Reduction Pursuant to USSG Amendment 791

Movant contends that appellate counsel should have sought a sentence reduction pursuant to USSG Amendment 791. He argues that he was entitled to a two-level reduction under the Amendment and if counsel had sought such a reduction it would have been granted.

In reviewing the Court's application of the Guidelines, an appellate court "appl[ies] the version of the guidelines in effect on the date of the sentencing hearing." *United States v. Descent*, 292 F.3d 703, 707 (11th Cir. 2002). "Subsequent amendments that clarify the guidelines, however, should be considered on appeal regardless of the date of sentencing." *Id*. Substantive amendments to the Guidelines, on the other hand, are not applied retroactively on direct appeal. *See id*. at 709.

In determining whether an amendment is substantive or clarifying the court considers four factors. *See United States v. Jerchower*, 631 F.3d 1181, 1185 (11th Cir. 2011). The court looks at whether (1) the change is to the text of the guidelines or to the commentary; (2) the commission

described the change as clarifying or if its comments indicate a substantive change in the punishment; (3) the commission has expressly made the amendment retroactive; (4) the amendment has overturned circuit precedent. *See id.*

In this case, the change to the guidelines cited by Movant is the amendment of the "finance table." [ECF No. 1 at 14]. It is assumed that Movant is referring to the change in the amount of loss set forth in the guidelines although he does not expressly point to a particular section of Amendment 791. In the comments of the amendment, the Commission notes that the changes to the monetary tables were to account for inflation. *See* USSG App. C Nov. 1, 2018, Amendment 791, Reason for Amendment. This amendment was clearly not a clarifying amendment as it merely adjusted the punishment based on the amount of monetary loss as adjusted for inflation. Since the amendment was substantive rather than clarifying, any request that the Eleventh Circuit apply this amendment retroactively would have been denied. Counsel was not ineffective for failing to raise this issue on appeal.

### 6. *Giglio*[6] **Violations**

Movant next contends that counsel was ineffective for failing to raise an alleged *Giglio* violation. He alleges that the Government denied giving his wife immunity and then led the jury to believe that immunity had been granted. Movant further contends that the Government presented perjured testimony of FBI Agent Van Brunt and Immigration Officer Fred Books. Movant contends that Agent Van Brunt lied about contacting a witness. Movant claims Agent Van Brunt's contact with the witness prevented that witness from testifying. Movant alleges that

---

6 *Giglio v. United States*, 405 U.S. 150 (1972).

Officer Books lied about when he worked at two different immigration offices and about providing a VHS tape to the FBI.

To prevail on a *Giglio* claim, Movant must establish that the government knowingly used perjured testimony and that the falsehood was material. *See Phillips v. United States*, 849 F.3d 988, 993 (11th Cir. 2017). The false testimony is material "if there is any reasonable likelihood that [it] could have affected the judgment of the jury." *Id*. (citing *Agurs*, 427 U.S. at 103).

### a. Ex-Wife's Immunity

The claim that the Government lied about granting Movant's ex-wife immunity is refuted by the record. During the cross examination of his ex-wife, Movant asked if she had been granted immunity by the Government. She denied she had been granted immunity, but was challenged by Movant with a document. The document was a letter that advised Movant that his ex-wife's truthful testimony would not result in criminal exposure.

The Court addressed the issue at the conclusion of the ex-wife's testimony. The prosecution was permitted to continue its redirect examination, however the ex-wife testified that she did not remember being told that if she testified truthfully, she would not be exposed to criminal charges. Ultimately it was decided that the issue would be addressed by stipulation. The jury was advised that: "The parties stipulate that the government told Ms. Reyes that truthful testimony would not result in any criminal exposure."

As reflect in this record, the Government did not withhold the fact that the ex-wife had been granted immunity. The Government had provided Movant with a letter advising him of the terms and the jury was advised of those terms as well. There was no *Giglio* violation and Movant had an opportunity to impeach his ex-wife with this information. There was no basis for counsel to raise this claim on direct appeal. This claim should be denied.

- 22 -

b. **John Jackson**

Movant next alleges that the Government recruited his cellmate to sabotage his defense and suppress exculpatory evidence. He seems to argue that counsel should have argued on appeal that the Government's recruitment of his cellmate was prosecutorial misconduct which denied him due process and violated his right to a fair trial. He contends that his cellmate stole evidence and advised the Government he intended to call Carla Feline (his ex-fiancé), Ailyn Mollinedo (his current wife) and Renata Mezentsef (a former employee) as witnesses. He claims that Jackson, who was sentenced to 97 months imprisonment, was released after serving only 22 months. He further alleges that his family recently received two phone calls from inmates who said Jackson aided the Government. He argues that appellate counsel should have raised an issue of prosecutorial misconduct on appeal.

The allegations presented by the Movant are conclusory and not supported by anything in the record. These allegations were not developed at trial and would not have supported an argument for prosecutorial misconduct on appeal. In particular, Movant alleges that he only learned of some of these allegations "recently." In the absence of evidence to support these claims at the time of Movant's appeal, counsel could not have been ineffective for failing to raise a claim of prosecutorial misconduct on appeal.

c. **Agent Van Brunt**

Here although Agent Van Brunt testified that he did not meet with Movant's witness and the witness contradicted this testimony, Van Brunt's testimony was not material and did not interfere with Movant's desire to call the witness. The witness was contacted telephonically during

trial in a sealed hearing[7] by the Court because it was unclear if the witness intended to honor the Movant's subpoena. [CR ECF No. 480. at 80-89]. The witness advised the Court that he had no recollection of his report fraud. Nevertheless, Movant was permitted to question the witness to proffer his testimony. After Movant concluded his questioning it was evident that this witness had nothing relevant to offer and the Court excused him from his subpoena. In light of the witness's lack of recollection, and the Court's determination that his testimony was not relevant, the fact that Van Brunt was mistaken in his testimony about speaking to the witness did not materially affect the outcome at trial. Movant has therefore failed to establish a viable *Giglio* claim and counsel was not ineffective for failing to raise such a claim on appeal.

d.   **Fred Books**

Movant's claim that Immigration Officer Books lied in his testimony is not supported in the record. Movant claims that Books lied about when he moved from the Oakland Park office to the Kendall office. However, Books testimony is not inconsistent. He first testified that he was transferred out "shortly" after conducting the interview. [CV ECF No. 473 at 52]. Later he testified that he was transferred "immediately" after conducting the interview. [CV ECF No. 473 at 62]. Even if these two bits of testimony could be considered inconsistent the question of whether he was transferred immediately or shortly after conducting the immigration interview was in no way relevant or material to his testimony.

Similarly, Officer Book's testimony regarding whether he provided the videotape of the interview as also not inconsistent. Officer Book never denied giving Van Brunt the videotape. He the first testified that he did not give the videotape to Agent Van Brunt the same day as the

---

7 The Government was not present during this phone call.

interview, which occurred on August 30, 2011. [ECF No. 473 at 49]. Later he testified that he did not hand the videotape to Agent Van Brunt but acknowledged that the videotape had been given to Van Brunt by either himself or the branch chief. [ECF No. 473 at 94.]. Book could not remember if personally gave the videotape to Van Brunt. [*Id*.]. As with Book's testimony about when he was transferred, his testimony as to whether he personally gave the videotape to Agent Van Brunt was neither relevant or material. Counsel could not be ineffective for failing to raise either of these meritless issues.

### 7.  Challenge Offenses under 18 U.S.C. § 1341

Movant next contends that the Government wrongly charged mail fraud "because FedEx, UPS and DHL are not the recipient for purposes of § 1341." This claim could have been presented on direct appeal. In the absence of any explanation of cause for failing to raise this claim on direct appeal it is procedurally barred and should be denied.

## VI. Evidentiary Hearing

Movant is also not entitled to an evidentiary hearing on the claims raised in this proceeding, having failed to demonstrate that his allegations, if proved, would establish his right to collateral relief. *See Schriro v. Landrigan,* 550 U.S. 465, 473-75 (2007); *see also Holmes v. United States,* 876 F.2d 1545, 1553 (11th Cir. 1989).

## VII. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal, and to do so, must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell,* 556 U.S. 180 (2009). This Court should issue a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a

petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Upon consideration of the record as a whole, this Court should deny a COA. Notwithstanding, if Movant does not agree, he may bring this argument to the attention of the District Judge in objections.

## VIII. <u>Conclusions and Recommendations</u>

Based on the above, it is recommended that:

1. the Motion to Vacate be DENIED on the merits;

2. that no certificate of appealability issue; and,

3. the case closed.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1 (2016); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

Signed this 14th day of December, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc:    Rogerio Chaves Scotton
7797 Golf Circle Drive
Apartment 204
Margate, FL 33063
PRO SE

Bertha R. Mitrani
United States Attorney's Office
500 E Broward Boulevard
7th Floor
Fort Lauderdale, FL 33301-3002
Email: bertha.mitrani@usdoj.gov